OPINION
{¶ 1} Defendant-appellant, Lindsay-Green, Inc., appeals from a judgment of the Franklin County Court of Common Pleas that overruled its motion for judgment notwithstanding the verdict, new trial, and remittitur; granted judgment in favor of plaintiff-appellee, Ronald A. Miller; and awarded Miller $1,100,000 in damages, in addition to pre- and post-judgment interest. For the following reasons, we affirm in part, reverse in part, and remand.
 {¶ 2} In the autumn of 2000, H. Bert Lindsay sought to hire a new general manager for Honda East, the Columbus Honda dealership Lindsay-Green owned. Lindsay held 50 percent of Lindsay-Green's stock and operated Honda East. For over 19 years, Denny Steele had acted as the general manager of Honda East, but in 1998, Steele's health began deteriorating and his job performance waned. Honda East's profits declined along with the state of Steele's health. Seeing the profitability of his dealership in jeopardy, Lindsay approached the American Honda Motor Company ("American Honda") assistant regional sales manager for Honda East's region and asked if he knew of any highly-qualified individuals who would be interested in the Honda East general manager position. The assistant regional sales manager recommended Miller.
 {¶ 3} In early October 2000, Lindsay first called Miller seeking to convince him to become the general manager of Honda East. At the time of this telephone call, Miller had worked as the general manager of Rick Case Honda, located in Akron, for over six years and had won the prestigious President's Award from American Honda for the previous four years. Although flattered by Lindsay's interest, Miller did not want to move to Columbus and told Lindsay so. Miller explained to Lindsay that he was a native of northeastern Ohio, he was building a house in the area, and he had a daughter in high school.
 {¶ 4} Undeterred, Lindsay called Miller again days later and convinced him to visit Honda East. After numerous telephone calls and two visits to Columbus, Miller telephoned Lindsay and told him that he was seriously considering Lindsay's job offer, but that his compensation package would have to be substantial to convince him and his family to leave Akron. Miller later testified at trial that it was during this telephone call that Lindsay first offered to employ Miller for ten years. Lindsay told Miller that he would expect Miller to spend the first year revitalizing Honda East, and the next four managing both Honda East and Lindsay Acura, another dealership Lindsay owned. Also, during the first five years, Lindsay wanted Miller to train his two sons to manage the two dealerships. Miller would then spend the last five years of his employment overseeing and mentoring Lindsay's sons as they managed the dealerships.
 {¶ 5} In the course of this telephone call, Miller and Lindsay also discussed the broad outlines of a pay plan for Miller. Lindsay directed Miller to draft a pay plan proposal based upon his pay plan at Rick Case Honda. Miller's first draft pay plan, entitled "Terms of Acceptance," included a monthly base salary and a monthly and yearly bonus, along with other benefits. Miller and Lindsay started negotiations based upon this first draft and eventually settled on the following terms:
Pay:
Monthly Salary $5,000, Annual review.
Monthly Bonus (Total gross profit, less, total expenses, plus, fixed expenses, plus F I commission, miscellaneous × 10%. From Dealership monthly operating statement.
6 Month guarantee $12,000 per month.
Year-end bonus of year end Net bottom-line profits (December statement, before owner draws after normal adjustments, Used Car write down, Parts inventory adjustments, Bad dept check write-off. From Dealership monthly operating statement.
Year end bonus percentage schedule: Year end after 1 year = 10% 2 Years and all proceeding years =5%.
Additionally, Lindsay agreed to give Miller "[a]ny supplier factory contests trips earned," although Lindsay retained the right of "first choice" on any trips. Lindsay also agreed that Honda East would pay for Miller's moving expenses and the temporary storage of Miller's furniture.
 {¶ 6} After Lindsay signed the "Terms of Acceptance" agreement, Miller resigned his employment with Rick Case Honda. Barry Freeder, the president and chief financial officer of the Rick Case organization of dealerships, contacted Miller and asked why he was leaving. Miller explained that he was excited by the opportunity to manage a larger dealership in a metro market. Freeder replied that if Miller wanted to work in a metro market, Rick Case would place him in any of its larger dealerships. Miller declined this offer, telling Freeder he had already accepted the position with Honda East and was anticipating the challenge of turning the dealership around.
 {¶ 7} Miller officially began his employment with Honda East in early November 2000. On or about November 1, 2000, Miller signed a document entitled, "Acknowledgment of Receipt of Employee Handbook" ("Acknowledgment"). This acknowledgment read:
This will acknowledge your receipt and understanding of the provisions contained in our Employee Handbook. The information contained in the Employee Handbook has been prepared to give you a better understanding of your job at Honda East and to give you a summary of the wages, benefits and personnel policies and programs of the Dealership. * * *
[T]he policies and statements contained in this Employee Handbook (and any future changes) are not considered as an employment contract. Instead, the Handbook serves the purpose of a guideline to help improve our mutual communications. Also, it should be noted that your employment is considered an "at will" arrangement, meaning that you may terminate your employment at any time and the Dealership has this same right. If you have any questions about any of the policies contained in the Handbook, please contact your supervisor or the Human Resources Director.
I acknowledge that I have received a copy of the Honda East Employee Handbook. I understand that it is my obligation to read and comply with the policies and provisions contained within the handbook. I further understand that if I have any questions about any policies or provisions, it is my responsibility to contact my supervisor or Human Resources Director.
 {¶ 8} Like the Acknowledgment, the handbook warned Honda East employees that it "is not a contract of employment and none of the provisions are to be construed as a contract or guarantee concerning terms and conditions of employment." Further, the handbook stated that:
Employment with Honda East is not offered, contracted or promised for any specific length of time. Each employee is free to resign at will, at any time and for any reason. Similarly, the Dealership may terminate the employment relationship at will, at any time and for any reason.
 {¶ 9} Once Miller began delving into the operations and processes of Honda East, he discovered the dealership had more problems than he originally foresaw. However, he worked diligently to improve each department within the dealership. Over time, Miller's hard work paid off. Honda East's 2001 year-end net profits reached approximately $1.2 million. Further, the financial and insurance commissions ("F and I commissions") earned in 2001 amounted to approximately $400,000. With the F and I commissions, the 2001 year-end net profits increased 800 percent over the 2000 year-end net profits.
 {¶ 10} Despite Miller's success in increasing profits, Miller's relationship with Lindsay was not without its problems. In June 2001, Lindsay met with Miller and requested that they change the method by which Miller's monthly bonus was calculated. Originally, Lindsay had agreed that Miller's monthly bonus would be ten percent of the monthly net profits plus the dealership's fixed expenses. Lindsay stated that the dealership was on track to make a sizable profit for the year, and given that Miller's monthly bonuses were based upon profits, Miller was earning in excess of what Lindsay expected to pay him when he signed the "Terms of Acceptance" agreement. Therefore, Lindsay wanted Miller to agree that his monthly bonus would be calculated without adding the fixed expenses onto the monthly net profits. Miller objected to the change, telling Lindsay that he needed his full monthly bonus because he was maintaining two households. Nevertheless, Miller agreed to revisit the issue at the end of the year.
 {¶ 11} Eventually, Lindsay prevailed on the fixed expenses issue. Beginning in January 2002, the formula used to calculate Miller's monthly bonus no longer included fixed expenses. In order to avoid conflict with Lindsay, Miller conceded to this change and accepted the reduced bonus without protest.
 {¶ 12} In February 2002, Miller drafted a document entitled, "Year End Washout Proposal," in which Miller calculated his year-end bonus. Because Miller knew that Lindsay already felt that he was overpaying him, Miller proposed that Lindsay only pay him a $80,466 year-end bonus, about half of the amount Miller believed he was entitled to under the "Terms of Acceptance" agreement.
 {¶ 13} Lindsay and Miller met twice to discuss Miller's year-end bonus. In the first meeting, Lindsay flatly refused to pay Miller any bonus. In the second meeting, on April 9, 2002, Lindsay and Miller discussed their problems, including Lindsay's perception that Miller was not doing enough to train Lindsay's son, Dusty. Miller left the meeting believing that he would receive a bonus.
 {¶ 14} Immediately after the April 9, 2002 meeting, Miller talked to Dusty Lindsay. At trial, Miller and Dusty testified to drastically different versions of this conversation. Although the parties dispute what was said, they do not dispute that Dusty believed that Miller denigrated and belittled him. Dusty reported his version of the conversation to his father, who decided to fire Miller based upon what Dusty had told him.
 {¶ 15} On April 11, 2002, Lindsay called Miller into his office and told Miller that he could not work for Honda East any longer. Lindsay offered Miller $50,000 in severance pay, which Miller immediately rejected. Miller quickly sought another position, and on April 17, 2002, he began working for Infiniti of Columbus as its general manager.
 {¶ 16} On May 29, 2002, Miller filed suit against Lindsay-Green and Lindsay (collectively "defendants") for breach of contract, promissory estoppel, and age discrimination. In his complaint, Miller asserted that because Lindsay-Green breached the "Terms of Acceptance" agreement, he was entitled to damages in the amount of his year-end bonus and other compensation that Lindsay-Green failed to pay him. Second, Miller asserted that he was entitled to equitable relief because Lindsay-Green broke the promise to employ him for ten years. Finally, Miller asserted that both defendants discriminated against him on the basis of his age when Lindsay fired him and planned to eventually replace him with Lindsay's son, who was younger than Miller.
 {¶ 17} After extensive discovery, defendants moved for summary judgment on all Miller's claims. With regard to Miller's breach of contract claim, defendants argued, in part, that no contract existed because Miller could not prove that the parties mutually assented to be bound by the "Terms of Acceptance" agreement. With regard to Miller's promissory estoppel claim, defendants argued that Miller could not prove the claim because: (1) Lindsay's references to ten-years' employment were too ambiguous to amount to a specific promise, or alternatively, (2) Miller could not have reasonably relied upon a promise for ten-years' employment because he signed the Acknowledgement, which included an at-will disclaimer. Also, defendants argued that if the "Terms of Acceptance" agreement was a contract, then the rule of parol evidence barred the introduction of any evidence of Lindsay's earlier, oral promise of ten-years' employment. Without evidence of the promise, defendants argued, Miller's promissory estoppel claim failed. Finally, with regard to Miller's age discrimination claim, defendants argued that Miller could not prove discrimination via direct evidence or a prima facie case.
 {¶ 18} Miller responded to defendants' summary judgment motion by referring the trial court to testimony and documents that supported his claims and, often, conflicted with evidence defendants presented. Miller maintained that given the state of the evidence, genuine issues of fact remained that required the trial court to deny defendants' summary judgment motion.
 {¶ 19} On December 16, 2003, the trial court issued its decision granting in part and denying in part defendants' motion for summary judgment. First, the trial court held that Miller presented evidence that, if believed, demonstrated the parties' mutual assent to the "Terms of Acceptance" agreement. Thus, the trial court denied defendants summary judgment on Miller's breach of contract claim.
 {¶ 20} Second, the trial court held that Miller also presented evidence that, if believed, demonstrated that Lindsay made a specific promise to Miller of ten-years' employment and that Miller relied upon that promise to his detriment by turning down offers of more money and other employment from the Rick Case organization. Also, the trial court held that whether Miller's reliance on Lindsay's promise was reasonable in light of the at-will disclaimer in the Acknowledgment was a question of fact for the jury. Thus, the trial court denied defendants summary judgment on Miller's promissory estoppel claim.[1]
 {¶ 21} Third, the trial court found that Miller could not prove a prima facie case of age discrimination because he was not replaced by a substantially younger individual. Thus, the trial court granted defendants summary judgment on Miller's age discrimination claim. Subsequently, the trial court also dismissed Lindsay from the case because the only claim Miller asserted against him was age discrimination.
 {¶ 22} On March 29, 2004, the parties began trying the breach of contract and promissory estoppel claims to a jury. Witnesses included Miller, Lindsay, and Dusty Lindsay. On April 12, 2004, the jury returned a verdict in favor of Miller. As expressed in the jury interrogatories, the jury found that the "Terms of Acceptance" agreement was a contract and that Lindsay made a specific promise that Miller would be employed for a term of years that Miller relied upon. The jury awarded Miller $225,000 in damages for breach of contract, and $875,000 for promissory estoppel.
 {¶ 23} On April 28, 2004, the trial court entered judgment upon the jury verdict, ordering Lindsay-Green to pay $1,100,000, plus post-judgment interest, to Miller. Thereafter, Lindsay-Green filed a motion for judgment notwithstanding the verdict, new trial, and remittitur. In this motion, Lindsay-Green argued that it was entitled to a judgment notwithstanding the verdict on Miller's promissory estoppel claim for two reasons. First, Lindsay-Green contended that the Acknowledgment was a contract for at-will employment, and as such, the parol evidence rule barred any evidence of Lindsay's oral promise of ten-years' employment made before Miller signed the Acknowledgement. In the absence of evidence of Lindsay's promise, Lindsay-Green argued, Miller could not prove the first element of his promissory estoppel claim, and thus, his claim failed as a matter of law. Second, Lindsay-Green contended that Miller waived his right to ten-years' employment when he signed the Acknowledgment without protesting that it referred to employment with Honda East as an at-will arrangement. Lindsay-Green argued that Miller could not prevail on a promissory estoppel claim based upon a promise he waived.
 {¶ 24} Additionally, Lindsay-Green contended in its post-trial motion that it was entitled to a new trial or remittitur because the amount of the jury's award of damages for the breach of contract claim was excessive and/or the result of passion or prejudice. Also, Lindsay-Green argued that it was entitled to a new trial on Miller's promissory estoppel claim, or a remittitur of the damages awarded for promissory estoppel to zero, because the trial court erred in instructing the jury solely on expectancy — and not reliance — damages. Finally, Lindsay-Green argued that it was entitled to a new trial on Miller's promissory estoppel claim because the trial court did not instruct the jury to reduce the amount of the future damages it awarded to present value.
 {¶ 25} Meanwhile, Miller, too, filed a post-judgment motion. In his motion, Miller sought prejudgment interest on the entirety of the damages award.
 {¶ 26} On July 23, 2004, the trial court issued two decisions. In the first, the trial court denied Lindsay-Green's motion for judgment notwithstanding the verdict, new trial, and remittitur. First, the trial court held that the parol evidence rule had no bearing on the outcome of the case because the Acknowledgement was not a contract for at-will employment. Second, the trial court held that Miller did not expressly waive or abandon his right to employment for ten years by signing the Acknowledgment. Finally, the trial court held that Lindsay-Green was not entitled to a new trial or remittitur because: (1) it properly instructed the jury solely on expectancy damages, and (2) the evidence supported the jury's $225,000 damage award for breach of contract.[2]
 {¶ 27} In its second decision, the trial court granted Miller's motion for prejudgment interest, but only to the extent that he requested prejudgment interest as to the damages awarded for the breach of contract claim. The trial court found that Miller's breach of contract claim accrued on January 31, 2002, and thus, it awarded prejudgment interest at the statutory rate of ten percent per annum from that date through April 28, 2004.
 {¶ 28} On August 10, 2004, the trial court entered final judgment in favor of Miller and awarded Miller a total of $1,150,424.79, plus post-judgment interest. Lindsay-Green now appeals that judgment to this court.
 {¶ 29} On appeal, Lindsay-Green assigns the following errors:
[1.] The trial court erred by denying Defendant-Appellant's motion for summary judgment insofar as it applied to Plaintiff-Appellee's promissory estoppel claim.
[2.] The trial court erred by rejecting Defendant-Appellant's proposed jury instructions concerning Plaintiff-Appellee's promissory estoppel damages.
[3.] The trial court erred by declining to grant Defendant-Appellant judgment as a matter of law, a new trial, and/or remittitur.
[4.] The trial court erred in calculating prejudgment interest by holding that Plaintiff-Appellee's entire contract claim accrued on January 31, 2002.
 {¶ 30} By its first assignment of error, Lindsay-Green argues that the trial court erred in denying it summary judgment on Miller's promissory estoppel claim. We disagree.
 {¶ 31} A party may appeal the denial of a motion for summary judgment after a subsequent, adverse final judgment. However:
Any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made.
Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d 150, syllabus. In other words, if a trial court denies a summary judgment motion due to the existence of genuine issues of material fact, and a subsequent trial on these issues of fact results in a verdict supported by the evidence for the party who did not move for summary judgment, then substantial justice requires an appellate court to affirm the denial of summary judgment. Id. at 156. To allow a summary judgment decision based upon less evidence to prevail over a verdict reached on more evidence would defeat the fundamental purpose of judicial inquiry. Id. at 157, quoting Home Indemn. Co. v. Reynolds Co. (1962), 38 Ill.App.2d 358,365-367.
 {¶ 32} On the other hand, when a trial court denies a motion for summary judgment based upon the resolution of a purely legal question, an appellate court may review that decision regardless of the movant's success at trial. Stewart v. Ohio Dept. of Rehab. Corr., Franklin App. No. 02AP-816, 2003-Ohio-588, at ¶ 8; Promotion Co., Inc. v.Sweeney, 150 Ohio App.3d 471, 2002-Ohio-6711, at ¶ 15. Unlike factual questions, legal questions are not mooted by a subsequent trial that results in a verdict adverse to the movant. Whittington, supra, at 158;Evans v. Dayton Power Light Co., Adams App. No. 03CA763, 2004-Ohio-2183, at ¶ 16 ("In Whittington, the Court noted that the summary judgment motion in Balson [v. Dodds (1980), 62 Ohio St.2d 287] was predicated upon a pure question of law; therefore, the Court could not have deemed harmless the trial court's error in denying that motion.").
 {¶ 33} In the case at bar, only two arguments Lindsay-Green made in its summary judgment motion against Miller's promissory estoppel claim correspond with arguments Lindsay-Green now makes on appeal. First, Lindsay-Green argued then and argues now that Lindsay's oral promise of ten-years' employment constitutes parol evidence, and the existence of a subsequent written contract, the "Terms of Acceptance" agreement, prevents the introduction of the oral promise into evidence. Second, Lindsay-Green argued then and argues now that Miller presented no evidence to show that he detrimentally relied upon Lindsay's promise of employment for ten years.
 {¶ 34} Because Lindsay-Green's first argument presents a legal question, we may address it, even though Lindsay-Green did not prevail at trial. Appellate review of a denial of a summary judgment motion is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158,162.
 {¶ 35} To establish a claim for promissory estoppel, an employee must prove: (1) a clear and unambiguous promise, (2) made by the employer, (3) which the employer should reasonably and forseeably expect to induce reliance by the employee, and (4) upon which the employee must have actually relied and suffered injury as a result. Sidenstricker v. MillerPavement Maintenance, Inc. (Oct. 25, 2001), Franklin App. No. 00AP-1146. See, also, Wing v. Anchor Media, Ltd. (1991), 59 Ohio St.3d 108, 110, quoting Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, paragraph three of the syllabus ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."). In the case at bar, Lindsay-Green maintains that Miller cannot establish the first element of his claim for promissory estoppel because the parol evidence rule bars him from introducing evidence contradicting any term of the "Terms of Acceptance" agreement. Lindsay-Green argues that, by operation of law, at-will employment is one of the terms of the "Terms of Acceptance" agreement. As an oral promise of ten-years' employment contradicts a contractual term mandating at-will employment, Lindsay-Green argues that Lindsay's oral promise is inadmissible parol evidence.
 {¶ 36} The parol evidence rule is a substantive rule of law developed centuries ago to protect the integrity of written contracts. Ed Schory Son, Inc. v. Society Natl. Bank (1996), 75 Ohio St.3d 433, 440;Charles A. Burton, Inc. v. Durkee (1952), 158 Ohio St. 313, paragraph one of the syllabus. According to this rule, "`absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'"Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 27, quoting 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4. By prohibiting the introduction of extrinsic evidence to alter or supplement the parties' final, complete expression of their agreement, the parol evidence rule ensures the stability, predictability, and enforceability of written contracts and "`effectuates a presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements.'" Id., quoting 11 Williston on Contracts, supra, at 541-548, Section 33:1.
 {¶ 37} A corollary principal to the parol evidence rule is the rule of contract integration, whereby the degree of finality and completeness of a contract determines whether the parol evidence rule is applicable.Fontbank, Inc. v. CompuServe, Inc. (2000), 138 Ohio App.3d 801, 808. Like the rule of parol evidence, the rule of contract integration is a substantive rule of law. TRINOVA Corp. v. Pilkington Bros. (1994),70 Ohio St.3d 271, 276. According to this rule, the parol evidence rule applies to "fully integrated" contracts, but not to "partially integrated" contracts. 11 Williston on Contracts, supra, at 656, Section 33:19. A contract is fully integrated when both parties to the contract adopt it as a final and complete statement of the terms of their agreement. Id. at 612, Section 33:14; Restatement of the Law 2d, Contracts (1981) 117, Section 210(1). A contract is partially integrated when the parties to the contract adopt it as a final expression of only one portion of a larger agreement, making the contract incomplete. 11 Williston on Contracts, supra, at 658, Section 33:20.
 {¶ 38} Although the parol evidence rule does not apply to partially integrated contracts, when such a contract is at issue, a court may not admit extrinsic evidence that contradicts or varies the terms of the contract. Rather, admissible extrinsic evidence is limited to additional contractual terms that are consistent with the written terms of the partially integrated contract. TRINOVA Corp., supra, at 276. See, also, 11 Williston on Contracts, supra, at 659, Section 33:20 ("[I]f a contract is not fully integrated, parol evidence of additional contract terms may be admitted to complete the agreement, but only to the extent that the additional terms do not contradict the written terms of the agreement."). Thus, unlike a fully integrated contract, which cannot be contradicted or supplemented by extrinsic evidence, a partially integrated contract can be supplemented, but not contradicted, by extrinsic evidence.
 {¶ 39} "The question of partial integration must be determined from the four corners of the document itself * * *." TRINOVA, Corp., supra, at 276. In other words, extrinsic evidence is admissible to show the omitted portions of a contract if it is incomplete on its face, "as where it is a mere memorandum omitting essential elements." Roudebush Realty Co. v.Toby (1955), 99 Ohio App. 524, 529. See, also, Thomas J. Emery Mem.v. Kain (App. 1935), 19 Ohio Law Abs. 351, 352 ("Where it is apparent from the writing itself that it does not embody the entire contract of the parties, but only some distinct and separable part[,] the case is not within the [parol evidence] rule * * *.").
 {¶ 40} Generally, if a term stating the duration of a written contact is omitted, then the contract is only partially integrated and extrinsic evidence is admissible so that a court may determine the missing term.Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.
(1984), 15 Ohio St.3d 321, 323-324. If a term stating the duration of anemployment contract is omitted, then "a strong presumption in favor of a contract terminable at will" arises "unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other" to a definite durational term. Henkel v. Educational ResearchCouncil (1976), 45 Ohio St.2d 249, 255.
 {¶ 41} In Henkel, an employee claimed her employer hired her for a one-year period and cited as support for her claim an employment contract that provided for an annual rate of compensation, but did not specifically state a duration of employment. To determine whether the parties intended to bind each other to a specific durational term, the court considered what the hirer and employee said to each other about the duration of employment before they entered into the employment contract, whether the hirer had authority to employ the employee for a specific term, and the employer's policy regarding hiring employees for a specific term. Because none of this evidence supported the employee's contention that she was retained for a specific period, the court found that her employment was at will.
 {¶ 42} Although Henkel does not discuss the parol evidence or contract integration rules, its holding is consistent with these principles. If, like in Henkel, an employment contract omits a durational term, it is partially integrated and extrinsic evidence is admissible to prove whether the parties intended to contract for a specific period. Notably, in such an instance, evidence of duration is admissible because it supplements, and does not contradict, the written portion of the employment contract. In the absence of any evidence of duration, a court must presume that the parties intended to create an at-will employment arrangement.
 {¶ 43} In the case at bar, the "Terms of Acceptance" agreement did not contain a durational term. Consequently, the "Terms of Acceptance" agreement was incomplete on its face, and thus, only partially integrated. Accordingly, Miller could introduce evidence of Lindsay's oral promise to employ him for ten years to demonstrate that he and Lindsay-Green intended to bind each other for a definite durational term. Given that Miller introduced such evidence at trial, we conclude that the jury had sufficient basis on which to find that Lindsay-Green made "a clear and unambiguous promise" — the first element of Miller's promissory estoppel claim.
 {¶ 44} Lindsay-Green, however, argues that the "Terms of Acceptance" agreement is fully integrated and bars all parol evidence. Lindsay-Green maintains that, as a matter of law, this court must interpret any employment contract without an expressed term of duration, such as the "Terms of Acceptance" agreement, as a contract for at-will employment. If an at-will employment term is deemed part of the "Terms of Acceptance" agreement, then the agreement would be fully integrated and the parol evidence rule would operate to bar any contradictory term, including Lindsay's oral promise of ten-years' employment.
 {¶ 45} We find this argument unavailing for two reasons. First, during oral argument, Lindsay-Green's counsel conceded that the "Terms of Acceptance" agreement was only partially integrated because it lacked a durational term. Second, Clark v. Collins Bus Corp. (2000),136 Ohio App.3d 448, 451, the case Lindsay-Green cites for the rule of law that an employment contract silent as to duration is deemed to include an at-will employment term, relies upon Henkel, which cannot be read to support such a proposition. As we explained above, Henkel
provides that a court must presume a contract without a durational term is terminable at will, "unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other" to a specific term. Id. at 255. Therefore, we conclude that Henkel created a rebuttable presumption, not a rule of law requiring a court to impose an at-will employment term.
 {¶ 46} Based upon the foregoing, we conclude that because Lindsay's oral promise does not contradict any term in the "Terms of Acceptance" agreement, the parol evidence rule does not prevent its admission into evidence.
 {¶ 47} In support of its first assignment of error, Lindsay-Green next argues that the evidence before the trial court at the summary judgment stage supported only one conclusion: Miller did not detrimentally rely upon any promise Lindsay made. Because this argument challenges the trial court's conclusion that genuine issues of material fact on the issue of detrimental reliance precluded summary judgment, we must apply theWhittington doctrine. Consequently, if the jury's verdict in Miller's favor on this issue is supported by evidence introduced at trial, then any error by the trial court in denying summary judgment is moot. Id. at syllabus.
 {¶ 48} A plaintiff's detrimental reliance upon the promise must be "of a sufficiently definite and substantial nature so that injustice will result if the `promise' is not enforced." Talley v. Teamsters, Local No.377 (1976), 48 Ohio St.2d 142, 146. Rejecting an employment offer is sufficiently definite and substantial so as to constitute evidence of detrimental reliance. Onysko v. Cleveland Public Radio (July 27, 2000), Cuyahoga App. No. 76484; Nilavar v. Osborn (1998), 127 Ohio App.3d 1,17. See, also, Helmick v. Cincinnati Word Processing, Inc. (1989),45 Ohio St.3d 131, 136 (evidence that an employee decided to stop looking for other employment and rejected another job offer created a question of fact regarding whether the employee detrimentally relied upon the employer's promises of steady employment).
 {¶ 49} At trial, Miller testified that his previous employer offered to immediately employ him in one of its larger dealerships if he so desired. Miller declined this offer because Lindsay had promised him a definite term of employment. Because this evidence supports the jury's verdict for Miller on his promissory estoppel claim, any error the trial court made in denying Lindsay-Green's summary judgment motion is moot.
 {¶ 50} Accordingly, we overrule Lindsay-Green's first assignment of error.
 {¶ 51} We will next address Lindsay-Green's third assignment of error. By this assignment of error, Lindsay-Green argues that the trial court erred in three ways when it denied Lindsay-Green's motion for judgment notwithstanding the verdict, new trial, and remittitur. First, Lindsay-Green contends that the trial court erred in denying it a judgment notwithstanding the verdict on Miller's promissory estoppel claim. In support of this contention, Lindsay-Green asserts that the Acknowledgment is a contract that includes an at-will employment term, and that because Lindsay's oral promise of ten-years' employment contradicts this term, it is inadmissible parol evidence.[3] Second, Lindsay-Green contends that the trial court erred in denying it a judgment notwithstanding the verdict on Miller's promissory estoppel claim because Miller waived the promise of ten-years' employment when he signed the Acknowledgment. Third, Lindsay-Green contends that the trial court erred in denying it a new trial, or alternatively, remittitur, because the jury awarded excessive damages for Lindsay-Green's breach of the "Terms of Acceptance" agreement.
 {¶ 52} By Lindsay-Green's first two arguments, it challenges the trial court's denial of its motion for a judgment notwithstanding the verdict. The same standard applies to both motions for judgment notwithstanding the verdict and motions for directed verdict. Posin v. A.B.C. Motor CourtHotel, Inc. (1976), 45 Ohio St.2d 271, 275. Pursuant to Civ.R. 50(A), "a motion for directed verdict is granted if, after construing the evidence most strongly in favor of the party against whom the motion is directed, `reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.'" Goodyear Tire Rubber Co. v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512, 2002-Ohio-2842, at ¶ 3, quoting Civ.R. 50(A)(4). Although this analysis requires a court to review and consider the evidence, motions for directed verdict and judgment notwithstanding the verdict present a question of law because a court must examine the sufficiency of the evidence, not weigh the evidence or try the credibility of the witnesses. Wagner v. RocheLaboratories (1996), 77 Ohio St.3d 116, 119. See, also, Malone v.Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440, 445 ("[T]he court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?"). As motions for directed verdict and judgment notwithstanding the verdict present a question of law, an appellate court applies the de novo standard of review. Goodyear Tire Rubber Co.,
supra, at ¶ 4.
 {¶ 53} By its first argument under its third assignment of error, Lindsay-Green reprises its earlier parol evidence argument, but substitutes the Acknowledgment for the "Terms of Acceptance" agreement as the written contract that bars the introduction of Lindsay's oral promise of ten-years' employment. Lindsay-Green argues that the Acknowledgment is a contract in which Miller promised to "read and comply with the policies and provisions contained within the handbook." One of the provisions in the handbook states that employment at Honda East is at will. Additionally, the Acknowledgment itself states that employment at Honda East "is considered an at-will arrangement." Because a contractual term specifying at-will employment directly contradicts an earlier, oral promise to employ for a ten-year term, Lindsay-Green argues that the trial court should have excluded any evidence of Lindsay's oral promise pursuant to the parol evidence rule. Lindsay-Green asserts that without the ability to consider evidence of Lindsay's promise, no reasonable person could find for Miller on his promissory estoppel claim.
 {¶ 54} The application of the parol evidence rule depends upon the existence of a valid, integrated written contract. 11 Williston on Contracts, supra, at 612-615, Section 33:14 (also noting that the parol evidence rule "does not preclude evidence which contradicts the very existence or validity of an alleged contractual obligation"). Indeed, without such a contract to protect, the application of the parol evidence rule — intended to ensure the integrity of written contracts — would be pointless. Thus, in order to determine whether the parol evidence rule applies here, we must first consider whether the Acknowledgment is a contract.
 {¶ 55} Generally, a contract must include an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of object and consideration. Kostelnik v. Helper,96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 16, quoting Perlmuter PrintingCo. v. Strome, Inc. (N.D.Ohio 1976), 436 F.Supp. 409, 414. Additionally, a meeting of the minds of the parties as to the essential terms of the contract is a requirement to enforcing a contract. Id.;Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79 ("The law is clear that to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other.").
 {¶ 56} The party asserting the existence of an employment contract has the burden of proving each element necessary for the formation of the contract. Brown v. Lowe's, Inc., Trumbull App. No. 2003-T-0059,2004-Ohio-5457, at ¶ 50. Consequently, to prevail upon its argument that the Acknowledgment is a contract that bars parol evidence, Lindsay-Green had to present sufficient evidence at trial demonstrating each element necessary to create a contract. After reviewing the evidence, we conclude that Lindsay-Green failed to meet its burden because it did not provide sufficient evidence of consideration or a meeting of the minds.
 {¶ 57} First, Lindsay-Green presented no evidence of consideration. Under Ohio law, consideration consists of either a benefit to the promisor or a detriment to the promisee. Carlisle v. TR Excavating,Inc. (1997), 123 Ohio App.3d 277, 283. "A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." Lake Land Emp. Group of Akron,LLC v. Columber, 101 Ohio St.3d 242, 2004-Ohio-786, at ¶ 16.
 {¶ 58} Relying upon Columber, Lindsay-Green argues that its forbearance from discharging Miller served as the necessary consideration to form the at-will employment agreement expressed in the Acknowledgment. In Columber, the plaintiff-employee argued that the noncompetition agreement he signed after he had begun his at-will employment was not supported by consideration. In finding otherwise, the Supreme Court of Ohio held that at-will employment is a contractual relationship supported by consideration in the form of mutual promises: the promise of the employee to perform work under the direction and control of the employer, and the promise of the employer to pay the employee for his work at an agreed rate. Id. at ¶ 17-19. Because either the employee or the employer can terminate the contract at any time, the court found that each party could also propose to change the terms of their contract at any time. Id. at ¶ 17. Given the ongoing symbiotic nature of at-will employment, the court held that the plaintiff-employee's acceptance of the noncompetition agreement — a change in the employment contract — was given in exchange for consideration, i.e., the defendant-employer's continued employment of the plaintiff-employee, an at-will employee who it could legally terminate without cause. Id. at ¶ 19-20.
 {¶ 59} The holding of Columber does not apply in the instant case because the evidence shows that Miller was not an at-will employee when Lindsay-Green presented the Acknowledgment to him for signature. Rather, at that time, the parties had bound themselves to a ten-year employment relationship. Thus, forbearance from discharging Miller could not serve as consideration for the Acknowledgment because Lindsay-Green had already made a promise to retain Miller. See Merrill v. William E. Ward Ins.
(1993), 87 Ohio App.3d 583, 599 ("It is elementary that neither the promise to do a thing, nor the actual doing of it will constitute a sufficient consideration to support a contract if it is merely a thing which the party is already bound to do, either by law or a subsisting contract with the other party."). Lindsay-Green suffered no forbearance because, by the terms of its earlier promise, it was bound to continue to employ Miller whether or not he signed the Acknowledgment.
 {¶ 60} Further, this court has previously held that when an employer attempts to convert employment for a specific duration into employment at will, he must offer some separate consideration. In San v. Scherer (Feb. 5, 1998), Franklin App. No. 97APE03-317, the plaintiffs-employees were both employed under five-year contracts when the company that employed them was sold. The purchasing company required the employees to sign documents which read, in relevant part, "I further recognize and agree that * * * the Company may terminate my employment with or without notice and with or without cause at any time." When the company fired the employees before their five-year contracts elapsed, the employees filed suit for promissory estoppel. The company argued that the employees' promissory estoppel claim was barred because they had earlier signed agreements stating their employment was at will. This court disagreed and concluded that the documents did not constitute employment agreements, in part because they were not supported by consideration.
 {¶ 61} Like the employees in San, after Miller was employed for a specific term, he was presented with and required to sign a document — the Acknowledgment — that contained at-will language. However, contrary to Lindsay-Green's assertions, the Acknowledgment did not amount to an at-will employment agreement because, as in San, it was not supported by separate consideration.
 {¶ 62} Further, we note that the lack of consideration distinguishes this case from Cunningham-Malhoit v. Salomon Smith Barney, Inc., Lucas App. No. L-02-1277, 2003-Ohio-2795, one of the cases Lindsay-Green primarily relies upon to support its argument that the Acknowledgment is a contract. In Cunningham-Malhoit, the court concluded that two "Employee Handbook Receipt Forms" constituted agreements to arbitrate. Unlike Miller, the plaintiff-employee in Cunningham-Malhoit was an at-will employee, and thus, her employer's forbearance from discharging her served as the consideration needed to make the handbook receipt forms into contracts. Given Miller's status as an employee hired for ten years, some consideration beyond mere forbearance from discharge is required.
 {¶ 63} Second, the Acknowledgment is not a contract because Lindsay-Green, at best, created only a question of fact regarding whether it and Miller had a meeting of the minds. In order for a meeting of the minds to occur, both parties to an agreement must mutually assent to the substance of the exchange. Tiffe v. Groenenstein, Cuyahoga App. No. 80668, 2003-Ohio-1335, at ¶ 25, quoting Restatement of the Law 2d, Contracts, supra, at 52, Section 17, comment c; Reedy v. CincinnatiBengals, Inc. (2001), 143 Ohio App.3d 516, 521. In other words, when entering into a contract, the parties must have a distinct and common intention which is communicated by each party to the other. Huffman v.Kazak Bros., Inc. (Apr. 12, 2002), Lake App. No. 2000-L-152. As part of a meeting of the minds, "there must be a definite offer on one side and an acceptance on the other." Garrison v. Daytonian Hotel (1995),105 Ohio App.3d 322, 325. An offer is "`the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" Leaseway Distrib. Ctrs., Inc. v. Dept. of Adm. Servs.
(1988), 49 Ohio App.3d 99, 105, quoting Restatement of the Law 2d, Contracts, supra, at 71, Section 24.
 {¶ 64} Lindsay-Green asserts that the Acknowledgment form itself, prior to signature, was an offer of at-will employment. However, after reviewing the evidence, we conclude that a reasonable person could find that the Acknowledgment never amounted to an offer as it did not manifest Lindsay-Green's purported intention to create an at-will employment relationship with Miller through Miller's assent. First, the Acknowledgment does not represent itself as an offer of employment, but rather, it merely purports to be a written memorialization of an employee's receipt of the dealership handbook. Most of the text of the Acknowledgment is devoted to ensuring that the employee understands he must comply with the handbook provisions, even though the handbook serves only as a "guideline" and not an employment contract. Nothing in the Acknowledgment indicates that agreeing to comply with this "guideline" would convert the handbook provisions (including the at-will employment provision) into legally enforceable contractual terms.
 {¶ 65} Second, reasonable minds could differ regarding whether a single sentence in the Acknowledgment — "[a]lso, it should be noted that your employment is considered an `at-will' arrangement * * *" — constitutes an offer of at-will employment. In context, this sentence appears to refer to the handbook provision that states that employment with Honda East is at will. Yet, contrary to Lindsay-Green's interpretation of the Acknowledgment, immediately before the sentence at issue, the Acknowledgment contains a disclaimer that any handbook provision constitutes a contractual term. Thus, rather than inviting acceptance and the formation of a contract, the Acknowledgment actually discourages an employee from expecting his signature, or any other act of acceptance, to result in an employment contract.
 {¶ 66} Third, Lindsay-Green had already extended an offer of employment to Miller that he had accepted. Nothing in the Acknowledgment communicates that it is intended to add to or vary the terms of the employment relationship already existing between the parties. Consequently, it is questionable whether Miller understood that Lindsay-Green intended the Acknowledgment to extend another, different offer of employment.
 {¶ 67} In sum, the Acknowledgment appears to be nothing more than what it is entitled: a form requiring an employee's signature as "Acknowledgment of Receipt of [an] Employee Handbook." Therefore, we conclude that reasonable minds could find that the Acknowledgment was not an offer of at-will employment and that no meeting of the minds occurred.
 {¶ 68} Accordingly, because the evidence is insufficient to prove that the Acknowledgment is a contract, we conclude that it cannot serve as Lindsay-Green's basis for invoking the parol evidence rule. Therefore, the trial court properly denied Lindsay-Green a judgment notwithstanding the verdict on the ground that the oral ten-year promise was parol evidence that Miller could not introduce to prove the "clear and unambiguous promise" element of his promissory estoppel claim.
 {¶ 69} By Lindsay-Green's second argument under its third assignment of error, it asserts that the trial court erred in denying it a judgment notwithstanding the verdict on Miller's promissory estoppel claim because Miller waived the promise of ten-years' employment when he signed the Acknowledgement.
 {¶ 70} A waiver is defined as "a voluntary relinquishment of a known right, with the intent to do so with full knowledge of all the facts."RFC Capital Corp. v. EarthLink, Inc., Franklin App. No. 03AP-735,2004-Ohio-7046, at ¶ 58, quoting Newsom v. Newsom (Mar. 21, 2002), Franklin App. No. 01AP-686. Waiver assumes that one has an opportunity to choose between relinquishing and enforcing the known right. Chubb v. OhioBur. of Workers' Comp. (1998), 81 Ohio St.3d 275, 279. Thus, the party asserting a waiver must prove a clear, unequivocal, decisive act by the other party demonstrating a purpose to waive the known right. White Co.v. Canton Transp. Co. (1936), 131 Ohio St. 190, 198-199; Wheeling Corp.v. Columbus Ohio River RR. Co., 147 Ohio App.3d 460, 2001-Ohio-8751, at ¶ 95.
 {¶ 71} In the case at bar, Lindsay-Green's evidence of Miller's "clear, unequivocal, decisive act" is limited to his signature on the Acknowledgment. Lindsay-Green maintains that upon reading the sentence of the Acknowledgment referring to at-will employment, Miller had to act to preserve his right to ten-years' employment or lose this right. This argument, however, presumes that Miller understood that a single sentence in a generic handbook receipt form would vitiate Lindsay's promise of ten-years' employment. Given the ambiguity imbued in the determinative sentence by its context in a simple handbook receipt, we find a question of fact existed regarding the extent of Miller's understanding, and consequently, his intent to waive.
 {¶ 72} Further, we find that a reasonable trier of fact could conclude that the Miller believed that he, as general manager of Honda East with a separately negotiated employment contract, was excluded from the ambit of at-will employment. Not only was the handbook merely a "guideline," but it was also written for the average Honda East employee. Unlike all other Honda East employees, Miller had a separately negotiated employment contract that controlled over the general "guideline" contained in the handbook. Consequently, Miller could have reasonably construed the reference to at-will employment in the Acknowledgment as simply another provision that applied to the average Honda East employee, but not to him.
 {¶ 73} Because there is a question of fact regarding whether Miller waived the ten-year promise of employment, we conclude that the trial court properly denied Lindsay-Green a judgment notwithstanding the verdict on this issue.
 {¶ 74} By Lindsay-Green's third argument under its third assignment of error, it maintains that the trial court erred in denying it a new trial, or alternatively, remittitur, because the jury awarded excessive damages for Lindsay-Green's breach of the "Terms of Acceptance" agreement.
 {¶ 75} First, Lindsay-Green argues that it is entitled to a new trial under Civ.R. 59(A)(4), which states that a trial court may grant a new trial if the moving party proves "[e]xcessive or inadequate damages, appearing to have been given under the influence of passion or prejudice." The decision whether to grant a motion for a new trial pursuant to Civ.R. 54(A)(4) rests within the sound discretion of the trial court, and it will not be disturbed on appeal absent an abuse of that discretion.Jeanne v. Hawkes Hosp. of Mt. Carmel (1991), 74 Ohio App.3d 246, 257. In assessing whether a trial court has abused its discretion, a reviewing court must consider the amount of the verdict, whether the jury considered incompetent evidence, and whether improper conduct by the court or counsel potentially influenced the jury. Dillon v. Bundy
(1991), 72 Ohio App.3d 767, 774. Although the size of the verdict is a factor to be considered, it alone does not afford proof of passion or prejudice. Jeanne, supra, at 257; Shoemaker v. Crawford (1991),78 Ohio App.3d 53, 65. Rather, "[t]here must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the jury." Shoemaker, supra, at 65. Ultimately, a trial court should not grant a new trial on the basis of passion or prejudice unless the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities.Berge v. Columbus Community Cable Access (1999), 136 Ohio App.3d 281,317, quoting Pena v. Northeast Ohio Emergency Affiliates, Inc. (1995),108 Ohio App.3d 96, 104.
 {¶ 76} In the case at bar, Lindsay-Green argues that the jury's damages award for breach of contract was the result of passion or prejudice because it exceeded the amount of damages Miller proved at trial. Lindsay-Green maintains that the evidence Miller presented at trial proved, at best, only $162,035 in damages, but the jury awarded $225,000. Even if Lindsay-Green is correct in this assertion, the size of the verdict alone cannot prove passion or prejudice. Yet, Lindsay-Green does not cite any other evidence to support its argument that the jury was wrongfully inflamed. Therefore, we conclude that the trial court did not abuse its discretion when it found that the damages award was not a result of passion or prejudice, and thus, the trial court properly denied Lindsay-Green a new trial based upon Civ.R. 59(A)(4).
 {¶ 77} Second, Lindsay-Green argues that the trial court erred in not ordering a remittitur or new trial due to the lack of sufficient evidence to support the entirety of the jury's damages award for breach of contract. When a damages award is manifestly excessive, but not the result of passion or prejudice, a court has the inherent authority to remit the award to an amount supported by the weight of the evidence.Wrightman v. Consol. Rail Corp. (1999), 86 Ohio St.3d 431, 444. Four criteria are necessary for a court to order a remittitur: "(1) unliquidated damages are assessed by a jury, (2) the verdict is not influenced by passion or prejudice, (3) the award is excessive, and (4) the plaintiff agrees to the reduction in damages." Dardinger v. AnthemBlue Cross Blue Shield, 98 Ohio St.3d 77, 2002-Ohio-7113, at ¶ 184, citing Chester Park Co. v. Schulte (1929), 120 Ohio St. 273, paragraph three of the syllabus. If the prevailing party refuses to accept the remittitur, a court must order a new trial. Burke v. Athens (1997),123 Ohio App.3d 98, 102.
 {¶ 78} An appellate court "has the same unlimited power and control of verdicts and judgments as the trial court and may weigh the evidence and exercise an independent judgment upon questions of excessive damages[,] when no passion or prejudice is apparent." Moskovitz v. Mt. Sinai Med.Ctr. (1994), 69 Ohio St.3d 638, 654, fn.6, quoting Schulte, supra, at paragraph five of the syllabus. See, also, Duracote Corp. v. Goodyear Tire Rubber Co. (1983), 2 Ohio St.3d 160, 162-163 (reaffirming the principle stated in paragraph five of Schulte). Accordingly, if an appellate court determines that a damages award is not supported by the evidence, it may order a remittitur to the amount warranted by the evidence. Chandler Assoc., Inc. v. America's Healthcare Alliance,Inc. (1997), 125 Ohio App.3d 572, 591; Burke, supra, at 101. However, in making this determination, an appellate court must be mindful that the trial court is in the best position to determine whether a damages award is excessive. Moskovitz, supra, at 655.
 {¶ 79} In the case at bar, Miller sought $295,148 in damages for breach of contract, which included: (1) $175,430 for his 2001 year-end bonus; (2) $27,765 for his 2002 year-end bonus; (3) $50,000 in severance pay; (4) $16,127 for the wages lost when Lindsay-Green removed fixed expenses from the formula used to calculate Miller's monthly bonus; (5) $14,000 for a Honda sales contest; (6) $11,225 for his monthly and yearly bonus on a $56,130 insurance recovery; and (7) $600 for storage of Miller's personal household goods. Lindsay-Green, however, contends that Miller only presented sufficient evidence to support a jury award of $162,035, which is $62,965 less than the jury's award of $225,000.
 {¶ 80} Lindsay-Green points out five deficiencies in the evidence supporting the jury's damages award for breach of contract. First, Lindsay-Green argues that the evidence does not support a damages award that includes compensation for its failure to pay Miller $50,000 in severance. We agree. Miller testified that he only sought the $50,000 in severance pay as part of the damages award because Lindsay offered him that amount when he terminated Miller's employment. Consistent with this testimony, the "Terms of Acceptance" agreement does not include any provision regarding a severance payment. Thus, because there is no evidence that Lindsay-Green was contractually obligated to make a $50,000 severance payment, its failure to do so did not result in compensatory damages recoverable under a breach of contract claim.
 {¶ 81} Second, Lindsay-Green argues that the evidence demonstrates that Miller waived any claim to the $16,127 in wages he did not receive when Lindsay-Green excluded fixed expenses from his monthly bonus calculation beginning in January 2002. As we stated above, the "Terms of Acceptance" agreement entitled Miller to a monthly bonus of ten percent of Honda East's monthly net profits plus fixed expenses. Miller testified that Lindsay told him in June 2001 that he wanted to stop adding in the fixed expenses before calculating the bonus. Although Miller successfully delayed Lindsay's plan for a time period, beginning with his January 2002 bonus, Miller's monthly bonuses were calculated without the addition of the fixed expenses to the net profits. Miller testified that he recognized that his bonus had decreased because of the exclusion of fixed expenses from the bonus formula, but he accepted the reduced amount without protest in order to "get along" with Lindsay.
 {¶ 82} Based upon this uncontroverted evidence, reasonable minds could only conclude that Miller knowingly and voluntarily accepted the reduced monthly bonuses for January through March 2002. Thus, as a matter of law, we find that Miller waived his right to enforce the original contractual terms. See RFC Capital Corp., supra, at ¶ 58. Consequently, Miller is not entitled to the $16,127 he claimed Lindsay-Green shorted him as breach of contract damages.
 {¶ 83} Third, Lindsay-Green argues that the evidence does not support a damages award compensating Miller for unpaid year-end bonuses that he calculated using profits from finance and insurance commissions ("F and I commissions"). Lindsay-Green asserts that Miller is not entitled to such damages because the "Terms of Acceptance" agreement does not mandate the inclusion of F and I commissions in the year-end bonus formula. In making this argument, Lindsay-Green points out that the "Terms of Acceptance" agreement specifically states that Lindsay-Green must add in F and I commissions to calculate the monthly bonuses. However, as reflected in the following, the year-end bonus provision does not include any reference to F and I commissions:
Year-end bonus of year end Net bottom-line profits (December statement, before owner draws after normal adjustments, Used Car write down, Parts inventory adjustments, Bad dept check write-off. From Dealership monthly operating statement.
 {¶ 84} As Miller discovered during contract negotiations, Lindsay-Green did not account for F and I commissions income in the Honda East dealership monthly operating statements. Rather, F and I commissions were booked as income for a separate corporation, and appeared on that corporation's monthly operating statements. Thus, Honda East's "Net bottom-line profits" as stated in the "Dealership monthly operating statement" did not include F and I commissions profits. Consequently, pursuant to the plain terms of the "Terms of Acceptance" agreement, F and I commissions profits were not part of Miller's year-end bonus, and thus, no evidence supported a damages award based upon these profits.
 {¶ 85} Fourth, Lindsay-Green argues that the evidence does not support a damages award compensating Miller for unpaid monthly and yearly bonuses on the $56,130 insurance recovery. Miller testified that he discovered that two Honda East employees had stolen cars off the Honda East lot, and he made an insurance claim on those cars. In September 2001, Lindsay-Green received a check from its insurer for $56,130 as payment for the claim. At trial, Miller maintained that none of Honda East's 2001 monthly operating statements accounted for the insurance recovery, and thus, he was deprived of his monthly and yearly bonuses on this money. Therefore, Miller asserted that he was entitled to $11,226 of the insurance recovery, which equals the combined total of his ten percent monthly bonus and a ten percent yearly bonus on the $56,130 payment.
 {¶ 86} Lindsay-Green, however, argues on appeal that the "Terms of Acceptance" agreement does not entitle Miller to the $11,226. We agree. Both the monthly and yearly bonus provisions require that Lindsay-Green calculate Miller's bonuses based upon the numbers shown in the "Dealership monthly operating statement." As Miller testified that the insurance recovery was not reflected in Honda East's monthly operating statements, the "Terms of Acceptance" agreement did not entitle him to a bonus based upon it.
 {¶ 87} Fifth, Lindsay-Green argues that the evidence demonstrated that Miller used the wrong monthly operating statement when he calculated his damages for Lindsay-Green's failure to pay him his 2001 year-end bonus. Miller testified that he based his year-end bonus calculation upon the net profit shown in a January 1, 2001 to December 31, 2001 "Dealer Financial Statement Balance Sheet" generated by Lindsay-Green. Miller introduced this document into evidence. Lindsay-Green maintains that the document Miller relied upon was preliminary, and he should have instead relied upon a different January 1, 2001 to December 31, 2001 "Dealer Financial Statement Balance Sheet" that deducted approximately $80,000 in management bonuses from the net profits stated in Miller's document.
 {¶ 88} The "Terms of Acceptance" agreement does not require the use of a "final" operating statement nor does it require the deduction of management bonuses before the calculation of the year-end bonus. Thus, we conclude that the document Miller relied upon constituted competent, credible evidence the jury could have relied upon to calculate and award Miller damages.
 {¶ 89} Based upon the foregoing, we conclude that the amount of damages awarded exceeded the amount of damages proved by the evidence. We find that the evidence supports the following: (1) $134,840 for Miller's 2001 year-end bonus (ten percent of Honda East's 2001 net profit plus the owners' draws); (2) $22,158 for Miller's 2002 year-end bonus (five percent of Honda East's January through March 2002 net profits plus the owners' draws for that same time period); (3) $14,000 for the Honda sales contest; and (4) $600 for storage of Miller's personal household goods. The total of these damages equals $171,598, which is $53,402 less the jury's award of $225,000. Accordingly, we sustain Lindsay-Green's third assignment of error, but only to the extent that it argues that the trial court erred in not granting it a remittitur. Further, we grant a remittitur of $53,402, conditional upon Miller's acceptance of this reduction. If Miller does not consent to this remittitur, he is entitled to a new trial on his breach of contract damages.
 {¶ 90} We next turn to Lindsay-Green's second assignment of error. By this assignment of error, Lindsay-Green argues that the trial court erred in two ways when it instructed the jury regarding damages for promissory estoppel. First, Lindsay-Green argues that the trial court erred by refusing to give its proffered jury instruction on reliance damages, and instead, instructing the jury solely on expectancy damages. Second, Lindsay-Green argues that the trial court erred in failing to instruct the jury to reduce any damages it awarded for future damages to present value.
 {¶ 91} By its first argument under its second assignment of error, Lindsay-Green maintains that under the facts of this case, reliance damages are a more appropriate measure of damages, and the trial court should have so instructed the jury. Generally, a trial court should give a requested instruction if it is a correct statement of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction. Murphy v. Carrollton Mfg. Co.
(1991), 61 Ohio St.3d 585, 591. An appellate court reviews a trial court's refusal to give a requested jury instruction under the abuse of discretion standard. Dawson v. McNeal, Franklin App. No. 03AP-396,2004-Ohio-107, at ¶ 17; Peck v. Serio, 155 Ohio App.3d 471,2003-Ohio-6561, at ¶ 6.
 {¶ 92} If a party prevails upon his promissory estoppel claim, he may recover either reliance or expectancy damages. San, supra; Patrick v.Painesville Commercial Prop., Inc. (1997), 123 Ohio App.3d 575, 587;ZBS Indus., Inc. v. Anthony Cocca Videoland, Inc. (1994),93 Ohio App.3d 101, 106-107; In re Ohio Knife Corp. (Oct. 21, 1992), Hamilton App. No. C-910482; Newkirk v. Precision Automotive, Inc. (Mar. 3, 1992), Montgomery App. No. 12498; Mers v. Dispatch Printing Co.
(1988), 39 Ohio App.3d 99, 105. Reliance damages represent the detriment the promisee incurred by changing his position, and expectancy damages represent the prospect of gain from the promise. San, supra; Inre Ohio Knife Corp., supra. In each case, the appropriate remedy depends upon what justice requires. Mers, supra, at 105. In making this determination, a court must consider "the definiteness in measuring the damages caused by the reliance and whether the promise relied upon obligates the promisor into the future." Id.
 {¶ 93} In the case at bar, the trial court instructed the jury to award expectancy damages if it found for Miller on his promissory estoppel claim. Specifically, the trial court stated:
[I]f you decide in favor of the plaintiff, you should award him a sum of money that will compensate him for the monetary harm caused by the defendant's breach. * * * You may award the plaintiff all damages for the benefits of the bargain for which he relied upon in changing his position or in deciding not to change positions.
(Tr. 2229-2230.)
 {¶ 94} In giving this instruction, the trial court rejected Lindsay-Green's proffered jury instruction, which directed the jury to award reliance damages. Lindsay-Green argues that the trial court erred in refusing to give its proffered jury instruction because at-will employees are limited to reliance damages. Lindsay-Green contends that the employer's ability to terminate an at-will employee at any time prevents such an employee from receiving expectancy damages, i.e., damages for the salary that the employee expected to earn as a result of the employer's promise. We disagree.
 {¶ 95} Lindsay-Green's argument turns upon the incorrect premise that Miller was an at-will employee. As the jury found that the parties were bound to a ten-year employment relationship, Miller was not an at-will employee. Consequently, the trial court was not legally bound to instruct the jury solely on reliance damages.
 {¶ 96} Further, we conclude that the trial court did not abuse its discretion in finding that justice required expectancy, and not reliance, damages. Because Lindsay-Green was obligated to employ Miller for a definite period into the future, the jury had a sound basis upon which to calculate expectancy damages.
 {¶ 97} By its second argument under its second assignment of error, Lindsay-Green argues that it is entitled to a new trial because the trial court failed to instruct the jury to reduce the future damages it awarded to present value. Lindsay-Green first asserted this argument in its post-trial briefing. However, pursuant to Civ.R. 51(A), "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict." A party cannot circumvent the timing requirement of Civ.R. 51(A) by objecting to the failure to give an instruction in a motion for a new trial. Klein v. Bros. Masonry, Inc., Lucas App. No. L-02-1080, 2003-Ohio-3098, at ¶ 57, fn. 4 ("Nor is the requirement set forth in Civ.R. 51(A) eliminated if a party files a motion for a new trial.");Thornton v. Summit Cty. Bd. of Mental Retardation and Dev. Disabilities
(Jan. 26, 2000), Summit App. No. 19343 ("[T]he Civ.R. 51 requirement that a party object prior to the jury's retirement is not curtailed in any fashion if that party subsequently moves for a new trial.").
 {¶ 98} Generally, failure to comply with Civ.R. 51(A) results in a waiver of the alleged error on appeal. Stuller v. Price, Franklin App. No. 03AP-66, 2004-Ohio-4416, at ¶ 100. One limited exception to this rule is the plain error doctrine. Id. When applying the plain error doctrine in civil cases,
[R]eviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings.
Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121.
 {¶ 99} In arguing that this case is the "rare case with exceptional circumstances" that warrants the application of the plain error doctrine, Lindsay-Green relies primarily on this court's decision inEagle Am. Ins. Co. v. Frencho (1996), 111 Ohio App.3d 213. In Frencho,
the trial court granted the defendant a new trial because it found that its failure to instruct the jury on the reduction of future damages to present value constituted plain error and resulted in an excessively large verdict. In so holding, the trial court relied upon Galayda v. LakeHosp. Sys., Inc. (1994), 71 Ohio St.3d 421, 425, which states that "[u]nder the common law of Ohio, future damages must be reduced to present value, and a defendant is entitled to a jury instruction to that effect." This court affirmed the trial court's judgment, holding that the plain error doctrine applied because "the trial court's failure to instruct the jury on future damages was incorrect as a matter of law."Frencho, supra, at 219.
 {¶ 100} The Frencho court's holding, however, was directly contradicted by later case law from this court. In Mayhugh v. Grimm
(Mar. 20, 1997), Franklin App. No. 96APE07-857, this court again addressed whether the failure to discount an award of future damages to present value constituted plain error. Although the Mayhugh court citedFrencho in its decision, it held that "[a]ny error does not rise to the level of plain error." Id. (Emphasis added).
 {¶ 101} In the case at bar, we find Mayhugh to be more persuasive for three reasons. First, a prior decision is not determinative of a legal question when a latter case of the same court to the contrary is available. Secrest v. Citizens Natl. Bank of Norwalk, Huron App. No. H-02-048, 2003-Ohio-4731, at ¶ 20. Accordingly, because Mayhugh is the most recent decision regarding this issue, its holding is the deciding precedent. Second, it is not clear that Frencho was decided using the correct standard. In Frencho, the court applied the plain error doctrine merely because it found the trial court erred in a matter of law. Notably, the court did not determine that the trial court's legal error rose to the level of challenging the legitimacy of the underlying judicial process itself, as is required by Ohio law before a court may apply the plain error doctrine. Goldfuss, supra, at 122 (a court must apply the plain error doctrine only in the exceptional circumstance where the error "rises to the level of challenging the legitimacy of the underlying judicial process itself").
 {¶ 102} Third, Frencho is factually distinct from the case at bar. InFrencho, the trial court granted the defendant a new trial, in part, because the damages award was patently excessive. Here, Miller presented evidence that, even taking into consideration his salary at Infiniti, his compensation was $225,000 less per year than what he would have earned at Honda East. As Miller was fired about one and one-third years into the promised ten-year employment relationship with Lindsay-Green, Miller lost approximately $1,968,000 in compensation. The jury's award of $875,000 in damages was less than half of this amount. Because this damage amount was not grossly excessive and was supported by the weight of the evidence, it was not plain error for the trial court to fail to instruct the jury to account for the present value of future damages. See HawthorneEducational Serv., Inc. v. Friedman (C.A.6, 2000), 225 F.3d 658 (table) (not plain error to fail to instruct the jury regarding reducing future damages to present value when the jury's damages award is supported by sufficient proof and is not shockingly large); Kokesh v. Am. SteamshipCo. (C.A.6, b 1984), 747 F.2d 1092, 1096 (same).
 {¶ 103} Accordingly, we conclude that because the trial court did not commit plain error in failing to instruct the jury to reduce future damages to present value, Lindsay-Green is not entitled to a new trial on the appropriate amount of damages for Miller's promissory estoppel claim.
 {¶ 104} Because we have rejected both arguments Lindsay-Green asserts under its second assignment of error, we overrule that assignment of error.
 {¶ 105} By Lindsay-Green's fourth assignment of error, it argues that the trial court erred in calculating prejudgment interest due on the damages awarded for breach of contract. In its decision granting in part Miller's motion for prejudgment interest, the trial court found that Miller was entitled to an award of prejudgment interest at the rate of ten percent per annum from January 31, 2002 through April 28, 2004 on the $225,000 jury award for breach of contract. Lindsay-Green, however, argues that because the 2002 year-end bonus was not "due and payable" on January 31, 2002, the trial court erred in imposing interest on the entire breach of contract damages award, which included damages based upon the 2002 year-end bonus, starting January 31, 2002.
 {¶ 106} Pursuant to R.C. 1343.03(A), "when money becomes due and payable upon any bond, bill, note, or other instrument of writing * * * the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code." Such prejudgment interest does not punish the party responsible for the underlying damages, but rather, it acts as compensation and serves to make the aggrieved party whole. Royal Elec. Constr. Corp. v. Ohio State Univ.
(1995), 73 Ohio St.3d 110, 117. "Prejudgment interest under R.C. 1343.03(A) is awarded from the time the amount at issue becomes `due and payable.'"Miller v. Wikel Mfg. Co., Inc. (1989), 46 Ohio St.3d 76, 80. Where money becomes due under a contract, interest accrues from the time that the money due should have been paid. Star Bank Natl. Assn. v. CirrocumulusLtd. Partnership (1997), 121 Ohio App.3d 731, 749.
 {¶ 107} Once a party has a judgment for a contract claim, he is entitled to interest as a matter of law. Dwyer v. Elec., Inc. v.Confederated Builders, Inc. (Oct. 29, 1998), Crawford App. No. 3-98-18. After this initial hurdle, the trial court must make the factual determinations of "when interest commences to run, i.e., when the claim becomes `due and payable'" and "what legal rate of interest should be applied." Royal Elec. Constr. Corp., supra, at 115 (emphasis sic). An appellate court reviews these two factual determinations under an abuse of discretion standard. Dwyer Elec., Inc., supra. See, also, CincinnatiIns. Co. v. First Natl. Bank of Akron (1980), 63 Ohio St.2d 220, 226
(applying the abuse of discretion standard to the trial court's decision to award interest from a particular date).
 {¶ 108} In the case at bar, Miller's contract damages compensate him, in part, for Lindsay-Green's failure to pay him a 2002 year-end bonus as required by the "Terms of Acceptance" agreement. As Miller only worked from January through March 2002, his 2002 year-end bonus was limited to five percent of the net profits (plus the owners' draw) for those three months. The "Terms of Acceptance" agreement does not specify when Lindsay-Green was required to pay the year-end bonus, and the parties offered no testimony on this point. As a matter of logic, however, the year-end bonus could not be paid prior to the earning of the net profits upon which it was calculated. Consequently, it was impossible for the 2002 year-end bonus to be "due and payable" on January 31, 2002 — two months before Lindsay-Green even earned the profits on which Miller claimed a bonus. Accordingly, we find that the trial court abused its discretion in choosing January 31, 2002 as the date upon which interest began to accrue on the entirety of Miller's damages for breach of contract.
 {¶ 109} Lindsay-Green urges this court to find that the 2002 year-end bonus was "due and payable" on January 31, 2003 and to set that date as the starting point for the accrual of interest on the portion of the damages based upon the 2002 year-end bonus. We decline to do so. Because the accrual date is a question of fact, we leave this decision to the trial court to address upon remand.
 {¶ 110} Accordingly, we sustain Lindsay-Green's fourth assignment of error.
 {¶ 111} For the foregoing reasons, we overrule Lindsay-Green's first and second assignments of error. We sustain Lindsay-Green's third assignment of error, to the extent that Lindsay-Green argued the trial court erred in denying it a remittitur, and we grant Lindsay-Green a remittitur of the breach of contract damages award to $171,598, contingent upon Miller's acceptance of the reduction. In all other respects, we overrule Lindsay-Green's third assignment of error. Finally, we sustain Lindsay-Green's fourth assignment of error.
 {¶ 112} Based upon our resolution of the assignments of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand this case to that court. Upon remand to the trial court, Miller shall inform the trial court whether or not he accepts the remittitur. If he does not accept, the trial court shall conduct a new trial on the issue of damages for the breach of contract claim. If Miller does accept, the trial court shall address the prejudgment interest issue and enter judgment specifying the appropriate amount of damages in accordance with law and this opinion.
Judgment affirmed in part, and reversed in part, and cause remandedwith instructions.
Bryant and Petree, JJ., concur.
[1] The trial court did not address Lindsay-Green's argument that the "Terms of Acceptance" agreement, if a contract, prevented Miller from introducing parol evidence of the oral ten-year promise.
[2] The trial court did not address Lindsay-Green's argument that it was entitled to a new trial on Miller's promissory estoppel claim because no jury instruction directed the jury to reduce the amount of future damages to present value.
[3] In its appellate briefing, Lindsay-Green asserts that this argument originated as a ground on which it sought summary judgment, and thus, this court should address the argument pursuant to its first assignment of error. Our review of the memoranda Lindsay-Green filed in support of its summary judgment motion reveals that Lindsay-Green, in reality, argued that the Acknowledgment prevented Miller from reasonably relying upon Lindsay's oral promise, not that the Acknowledgment was a contract that barred the introduction of inconsistent parol evidence. As Lindsay-Green first made the parol evidence argument in support of its request for a judgment notwithstanding the verdict, we will address it under Lindsay-Green's third assignment of error.