OPINION
{¶ 1} Plaintiff-appellant, Barbara Duffer, as Administrator of the Estate of Billy G. Duffer, appeals from the judgment of the Franklin County Court of Common Pleas denying appellant's Civ.R. 50(B) motion for judgment notwithstanding the verdict and Civ.R. 59(A)(6) motion for new trial in appellant's medical malpractice suit against defendants-appellees, Dr. David M. Powell and University Otolaryngologists, Inc.
 {¶ 2} On September 30, 2002, appellant filed a complaint against appellees, noting that Dr. Powell worked for University Otolaryngologists during pertinent dates of the suit. The complaint alleged that Dr. Powell was negligent when he performed sinus surgery on Billy on March 24, 2002, and that he died on May 2, 2002, as a result of Dr. Powell's negligence.
 {¶ 3} A jury trial commenced and, at trial, appellant advanced two negligence theories. First, appellant asserted that Dr. Powell deviated from the requisite standard of care when the doctor injured Billy's brain with a surgical tool during the sinus surgery. Second, appellant asserted that Dr. Powell was negligent for proceeding with the sinus surgery while Billy had pneumonia.
 {¶ 4} During the trial, appellant called Dr. John Krouse to testify as an expert witness. Dr. Krouse specializes in otolaryngology, which is a medical specialty that concerns the head, neck, ear, nose, and throat. Dr. Krouse testified that Billy's pre-operative images indicated that the patient had an abnormality in one of his sinuses. However, Dr. Krouse stated that the images did not indicate that the abnormality required urgent surgical attention because the images did not evince an abnormality impinging on Billy's optic nerve or brain. Rather, Dr. Krouse opined that the abnormality was merely a cyst.
 {¶ 5} Next, Dr. Krouse verified that Dr. Powell made a pre-operative diagnosis of chronic sinusitis. Dr. Krouse stated that such a condition was not a surgical emergency. Dr. Krouse also verified that Billy's surgical consent form indicated that the patient had a cyst, which does not entail an urgent condition.
 {¶ 6} Dr. Krouse proceeded to testify that Billy's March 23, 2002 pre-operative chest x-ray report indicated that he had pneumonia. Dr. Krouse also testified that Dr. Powell had a duty to review the chest x-ray report. Moreover, according to Dr. Krouse, it would be dangerous to operate on a patient who had pneumonia because the general anesthetic would make the patient less able to clear the lungs. Dr. Krouse similarly testified that the pneumonia raises even greater concerns about surgical complications in patients like Billy who have chronic obstructive pulmonary disease. Thus, according to Dr. Krouse, Dr. Powell deviated from the requisite standard of care by operating on Billy while he had pneumonia. Instead, Dr. Krouse testified that Dr. Powell needed to perform the surgery after treating the pneumonia.
 {¶ 7} Thereafter, Dr. Krouse opined that Dr. Powell lost control of a surgical instrument and punctured Billy's brain during the March 24, 2002 surgery. Dr. Krouse stated that it was below the requisite standard of care for Dr. Powell to puncture Billy's brain during the sinus surgery. In opining as such, Dr. Krouse relied on Dr. Powell admitting in a medical report that he repaired a hole in a bone of one of Billy's sinuses. In discussing the hole in Billy's sinus bone, Dr. Krouse found incredible Dr. Powell's claim that the hole was already present before the surgery. Dr. Krouse also testified that he saw no sinus bone hole depicted in pre-operative images. However, Dr. Krouse admitted that a person might not be able to see a "very, very tiny hole" on an image. (May 12, 2005 Tr. at 107.)
 {¶ 8} Also, in opining that Dr. Powell punctured Billy's brain, Dr. Krouse relied on Billy sustaining brain swelling and air and blood to his skull after the surgery. Dr. Krouse rejected a theory that Dr. Powell stated in a pre-trial deposition that Billy's brain complications stemmed from a coughing episode that he had after the sinus operation. Dr. Krouse stated that he had never heard of such a circumstance. Instead, Dr. Krouse specified that the brain swelling and air to Billy's skull could only result from a penetration through the brain lining.
 {¶ 9} In further discussing the brain puncture, Dr. Krouse testified that it was irrelevant that the pathology report made no mention of brain tissue. Dr. Krouse reasoned that the pathology report would not reflect a simple puncture through the brain lining and brain.
 {¶ 10} Thereafter, Dr. Krouse testified that the abnormality in Billy's sinus appeared in post-operative images. Lastly, Dr. Krouse opined that the medical records indicated that Dr. Powell failed to properly drain or biopsy the abnormality in Billy's sinus.
 {¶ 11} Both appellant and appellees had Dr. Powell testify at trial, and we will present Dr. Powell's testimony altogether. Dr. Powell testified that he is an ear, nose, and throat surgeon who worked for University Otolaryngologists, Inc., on March 24, 2002. Dr. Powell admitted that Billy's pre-operative chest x-ray report indicated that Billy had pneumonia. Although Dr. Powell testified at trial that he either personally reviewed the x-ray report or discussed the x-ray report with the anesthesiologist before the sinus surgery, Dr. Powell admitted that, in his pre-trial deposition, he indicated that he did not recall whether he knew about the pre-operative chest x-ray report before the sinus surgery. However, Dr. Powell testified that he discussed with the anesthesiologist Billy's ability to undergo surgery, and Dr. Powell noted that the anesthesiologist requested no additional testing or treatment for Billy's pneumonia.
 {¶ 12} Next, Dr. Powell testified that, before the surgery, Billy complained of a headache, pain, and numbness to his face and visual blurriness in his left eye. Dr. Powell also testified that pre-operative images showed a lesion in one of Billy's sinuses. According to Dr. Powell, the lesion could have been cancer or a cyst that could have become infected and eroded through the sinus bone. Likewise, according to Dr. Powell, the lesion could have been a fungal infection that could have eroded through the sinus bone and presented a life-threatening situation. Thus, Dr. Powell proceeded to testify that it would have been "imprudent" and "a bad decision" to delay the surgery to wait for Billy's pneumonia to subside. (May 16, 2005 Tr. at 33.) Dr. Powell explained that the lesion presented a dangerous situation and noted the possibility that Billy's lungs may not have improved given his history of lung disease.
 {¶ 13} Dr. Powell then testified that he performed the sinus surgery on Billy on March 24, 2002, and indicated that the post-operative images evinced that he entered the affected sinus. In addition, Dr. Powell testified that, during the surgery, he noticed a hole in one of Billy's sinus bones that supported brain tissue, and that he repaired the hole in the sinus bone. Dr. Powell admitted that pre-operative images did not show a hole in Billy's sinus bone, but reasoned that the images might not have shown the very small hole in Billy's two-to-three-millimeter thick sinus bone. Moreover, Dr. Powell testified that, when he entered the affected sinus, he suctioned fluid from the sinus and took samples of the lesion, but avoided areas near the optic nerve. Dr. Powell also testified that he sent the lesion samples to pathology for analysis.
 {¶ 14} Next, Dr. Powell indicated that, on April 2, 2002, he found evidence of cerebral spinal fluid in Billy's sinus. However, Dr. Powell testified that, during the sinus surgery, the surgeon found no cerebral spinal fluid leak in Billy's sinus.
 {¶ 15} Likewise, Dr. Powell emphasized that he did not puncture Billy's brain or brain lining during the surgery. In testifying as such, Dr. Powell noted that post-operative images contained no markings that would indicate that he punctured Billy's brain lining. Dr. Powell also testified that the pathology report made no reference to brain tissue being found during the surgery, and noted that "if a surgeon ever did enter the brain, any pathology would be collected * * * and sent" for pathology. (May 16, 2005 Tr. at 61.) In addition, Dr. Powell further testified as follows:
[Appellees' counsel:] We know from radiology reports that after the March 24 surgery there is some indication of air, blood, and perhaps some cerebral edema [swelling] shown in the imaging studies?
[Dr. Powell:] That is right.
[Appellees' counsel:] Do you have an opinion as to the cause of that?
[Dr. Powell:] Yes, I do.
* * *
[Dr. Powell:] The * * * sinus was weak in the lateral wall, and there is this erosive, destructive process going on in the lateral wall of the * * * sinus that numerous people comment on * * *.
The patient had a profound episode of coughing after surgery on the 24th of March, 2002. I believe that in this episode of coughing, he forced air and blood, and maybe mucous through a weakened lateral wall in the * * * sinus and into the brain.
(May 16, 2005 Tr. at 69.)
 {¶ 16} Dr. Powell admitted that he had never previously heard of a coughing episode causing blood and air to be forced into the brain. Dr. Powell also noted that he read no medical literature that discussed a coughing episode causing blood and air to be forced into the brain. Likewise, Dr. Powell admitted that he first mentioned the coughing episode in a medical report that indicated that it was dictated and transcribed on May 30, 2002. However, Dr. Powell testified that Billy suffered from a coughing episode on March 24, 2002 after the sinus surgery. Lastly, Dr. Powell acknowledged a medical report that referenced Billy experiencing "[aggressive]" coughing after the sinus surgery.
 {¶ 17} Expert witness Dr. James Stankiewicz also testified on appellees' behalf. Dr. Stankiewicz is an ear, nose, and throat physician who maintains a subspecialty in surgery of the nose and sinus. Dr. Stankiewicz reviewed Billy's medical records and testified that Billy had a lesion in one of his sinuses in March 2002. Dr. Stankiewicz indicated that the lesion was a few millimeters away from Billy's brain, and the expert witness noted that the lesion could have been a tumor, a cyst or a fungus infection. According to Dr. Stankiewicz, if the lesion was a tumor, there was a possibility the tumor could have spread into Billy's brain. Dr. Stankiewicz also stated that, if the lesion was a fungus infection, it could have also spread into the brain and become life threatening. Dr. Stankiewicz also confirmed that a radiologist described the lesion as "destructive." (May 17, 2005 Tr. at 65.) Thus, Dr. Stankiewicz indicated that the lesion "needed urgent consideration as far as finding out what it [was] and moving on it." (May 17, 2005 Tr. at 60.) Similarly, Dr. Stankiewicz stated that, although Billy had pneumonia in March 2002, surgery was needed within one week to diagnose the lesion. In characterizing the urgency of the circumstances, Dr. Stankiewicz emphasized that surgery was needed "as soon as possible." (May 17, 2005 Tr. at 85.) In this fashion, Dr. Stankiewicz noted that he previously operated on patients with general anesthesia even though the patients had pneumonia. Similarly, Dr. Stankiewicz confirmed that, unlike here, he had anesthesiologists tell him that they would not give a general anesthetic to a patient because of the patient's respiratory condition. Ultimately, Dr. Stankiewicz opined that Dr. Powell made "a correct surgical or medical decision that comports with the standard of care" by operating on Billy on March 24, 2002. (May 17, 2005 Tr. at 75.)
 {¶ 18} Next, Dr. Stankiewicz testified that the medical records established that Dr. Powell entered into the affected sinus, drained the sinus, and took a sample for pathology analysis. Dr. Stankiewicz also opined that such procedures accomplished the goal of the surgery.
 {¶ 19} In further discussing the surgery, Dr. Stankiewicz discussed the hole in Billy's sinus bone that Dr. Powell repaired during the sinus surgery. In response to Dr. Krouse's testimony that the sinus bone hole evinced Dr. Powell puncturing Billy's brain, Dr. Stankiewicz indicated that no cerebral spinal fluid leaked through the hole, and Dr. Stankiewicz noted that such fluid would have leaked during the surgery if there happened to be a hole in Billy's brain lining. Dr. Stankiewicz also recognized that the post-operative images showed no markings to indicate that Dr. Powell punctured Billy's brain. Dr. Stankiewicz admitted that the images were "[n]ot necessarily" appropriate and that "there are other views that you could get * * * which might have given us some other information[.]" (May 17, 2005 Tr. at 74.) However, Dr. Stankiewicz nonetheless testified that "on the films that we have in this case, there is no evidence" of a puncture into the brain. (May 17, 2005 Tr. at 74.) Accordingly, Dr. Stankiewicz opined that Dr. Powell did not injure or harm Billy's brain.
 {¶ 20} On cross-examination, Dr. Stankiewicz noted that Dr. Powell did not obtain a biopsy to rule out cancer. Dr. Stankiewicz also admitted on cross-examination that the post-operative images showed that the lesion remained in Billy's sinus. Furthermore, Dr. Stankiewicz stated on cross-examination that he was not giving an opinion as to what caused Billy's brain to swell after the sinus surgery. However, on re-direct examination, Dr. Stankiewicz testified that a sinus could erode, weaken, and open "to the point where a forceful or violent cough can force air or blood into the head[.]" (May 17, 2005 Tr. at 116.)
 {¶ 21} Next, Dr. Philip Diaz testified on appellees' behalf. Dr. Diaz is a physician in pulmonary medicine, which involves treating lung diseases. Dr. Diaz testified that he treated Billy for chronic obstructive pulmonary disease and for bronchiectasis. According to Dr. Diaz, chronic obstructive pulmonary disease progressively makes it difficult for the sufferer to breathe. Dr. Diaz likewise indicated that bronchiectasis is a disease that primarily produces coughing and recurrent infections.
 {¶ 22} Dr. Diaz further testified that he examined Billy on March 21, 2002, because Billy had been suffering from a headache and facial pain and swelling. Dr. Diaz testified that he arranged for Billy to undergo a head scan. Dr. Diaz indicated that, after he spoke with the radiologist about the head scan, he became concerned about Billy's face and head, and the physician had Billy admitted to the hospital for "expedient surgical management" and antibiotics. (May 17, 2005 Tr. at 20.)
 {¶ 23} Dr. Diaz then opined that, from a pulmonary perspective, Billy could have gone to the operating room in March 2002. In so opining, Dr. Diaz confirmed that he saw Billy's pre-operative chest x-ray report, and Dr. Diaz stated:
I was not impressed with the chest x-ray. [Billy Duffer] had very bad bronchiectasis, so he has diffuse abnormalities in his chest x-ray. He had diffuse abnormalities in his chest x-ray baseline, and it can be difficult to pick up whether it is pneumonia or some fluid based on that, and so, you know, the day he had the surgery, on the 24th, I can't really tell that much of a difference between that film and a film that in January of 2002 on a baseline evaluation.
(May 17, 2005 Tr. at 45.) Thus, Dr. Diaz stated that "whether or not [Billy] had pneumonia is, I think, in question." (May 17, 2005 Tr. at 46.)
 {¶ 24} Infectious disease physician Dr. Julie Mangino also testified on appellees' behalf. Dr. Mangino testified that Dr. Diaz asked her to admit Billy to the hospital for problems in Billy's sinus and head. Dr. Mangino testified that she ultimately decided to have an ear, nose, and throat surgeon evaluate Billy for "emergent surgery." (May 16, 2005 Tr. at 111.) Although Dr. Mangino was aware of Billy's underlying pulmonary diseases, Dr. Mangino concluded at trial that:
From an infectious disease perspective, the issue that was going on in his face far overshadowed what was going on in his lungs.
(May 16, 2005 Tr. at 132-133.)
 {¶ 25} After considering this evidence, the jury unanimously found in favor of appellees by determining that Dr. Powell was not negligent in his care and treatment of Billy. Thus, the trial court entered judgment in appellees' favor. Thereafter, appellant filed a Civ.R. 50(B) motion for judgment notwithstanding the verdict and a Civ.R. 59(A)(6) motion for new trial. However, the trial court denied the motions.
 {¶ 26} Appellant appeals, raising one assignment of error:
The trial court abused its discretion in denying Plaintiff's motion for judgment notwithstanding the verdict and/or motion for new trial.
 {¶ 27} Appellant's single assignment of error first pertains to evidence presented to establish that Dr. Powell punctured and injured Billy's brain and brain lining during the surgery. In particular, appellant's expert, Dr. Krouse, opined that the following evidence indicated that Dr. Powell punctured and injured Billy's brain and brain lining during the sinus surgery: (1) post-operative images showed that Billy's brain experienced swelling and bleeding and showed that air went into Billy's skull; and (2) Dr. Powell admitted that, during the surgery, he repaired a hole in one of Billy's sinus bones.
 {¶ 28} In raising the above challenge, appellant first contends that appellees' evidence failed to refute appellant's evidence that Dr. Powell punctured and injured Billy's brain and brain lining during the sinus surgery. Therefore, according to appellant, the trial court erred by denying her Civ.R. 50(B) motion for judgment notwithstanding the verdict in regards to the jury rejecting appellant's above-noted claim about Billy's brain injury. We disagree.
 {¶ 29} In a Civ.R. 50(B) motion for judgment notwithstanding the verdict, the trial court considers evidence and admissions from the record in a light most favorable to the non-moving party. Posin v. A.B.C. Motor Court Hotel (1976),45 Ohio St.2d 271, 275. The trial court must deny the motion if substantial evidence exists to support the non-moving parties' case and if reasonable minds could reach different conclusions on essential elements of the claim. Id. In deciding the motion, the trial court considers neither the weight of the evidence nor the witnesses' credibility. Texler v. D.O. Summers Cleaners ShirtLaundry Co. (1998), 81 Ohio St.3d 677, 679. Likewise, the motion raises a question of law because the motion examines the "`materiality of the evidence, as opposed to the conclusions to be drawn from the evidence.'" Id. at 680, quoting Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68-69, andWagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,119-120. Because the motion for judgment notwithstanding the verdict presents a question of law, we review de novo the trial court's decision on the motion. Campagna v. Clark Grave VaultCo., Franklin App. No. 02AP-1106, 2003-Ohio-6301, at ¶ 10.
 {¶ 30} Here, considering evidence in a light most favorable to appellees, we conclude that substantial evidence supported appellees' contention that Dr. Powell did not puncture or injure Billy's brain or brain lining during the sinus surgery, and, as such, we find that reasonable minds could reach different conclusions on the matter. In particular, Dr. Powell testified that: (1) when he performed the sinus surgery he did not puncture Billy's brain or the brain's lining; and (2) the hole in Billy's sinus had already existed when the surgery commenced. Likewise, Dr. Powell testified that post-operative images revealed no markings to evince that he punctured Billy's brain or brain lining during the surgery. In addition, Dr. Powell indicated that the pathology report would have referenced brain tissue being found during surgery if he picked up brain tissue upon puncturing the brain during the surgery. Similarly, appellees' expert, Dr. Stankiewicz, testified that post-operative images revealed no markings to evince that Dr. Powell punctured Billy's brain during the sinus surgery, and Dr. Stankiewicz opined that Dr. Powell did not injure Billy's brain. Accordingly, we conclude that the trial court did not err by denying appellant's Civ.R. 50(B) motion for judgment notwithstanding the verdict in regards to the jury rejecting appellant's claim that Dr. Powell punctured and injured Billy's brain and brain lining during the sinus surgery.
 {¶ 31} Next, in her single assignment of error, appellant argues that appellees nonetheless failed to present competent and credible evidence to refute appellant's claim that Dr. Powell punctured and injured Billy's brain and brain lining during the sinus surgery. Thus, according to appellant, the trial court erred by denying appellant's Civ.R. 59(A)(6) motion for new trial in regards to the jury rejecting appellant's above-noted claim about Billy's brain injury. Again, we disagree.
 {¶ 32} Under Civ.R. 59(A)(6), a trial court grants a new trial if the "judgment is not sustained by the weight of the evidence[.]" In a Civ.R. 59(A)(6) motion, the trial court weighs the evidence and considers the credibility of the witnesses.Seymour v. Pierson, Stark App. No. 2005A00218, 2006-Ohio-961, at ¶ 46. A judgment is not against the manifest weight of the evidence if there is competent, credible evidence to support the jury's verdict. C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, 280.
 {¶ 33} When we review a trial court's decision on a Civ.R. 59(A)(6) motion for new trial, we do not directly review whether the judgment was against the manifest weight of the evidence.Malone v. Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440,448. Rather, we determine whether the trial court abused its discretion in ruling on the Civ.R. 59(A)(6) motion. Id. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Such deference to the trial court's decision recognizes that the trial court is in a better position to determine credibility issues. Malone at 448.
 {¶ 34} Here, appellant challenges the weight and credibility of Dr. Powell's claim that the hole in Billy's sinus bone had already existed when Dr. Powell performed the sinus surgery. In making such a challenge, appellant notes that pre-operative images indicated no hole to the sinus bone. However, the jury had cause to accept Dr. Powell's claim despite the absence of a sinus bone hole in the pre-operative images because he indicated that the pre-operative images might not have shown the very small hole in Billy's sinus bone and because Dr. Krouse testified that a person may not be able to see "very, very tiny" holes in the images. (May 12, 2005 Tr. at 107.)
 {¶ 35} Furthermore, appellant challenges Drs. Powell and. Stankiewicz's testimonies that post-operative images revealed no markings to establish that Dr. Powell punctured Billy's brain and brain lining during the sinus surgery. According to appellant, Dr. Stankiewicz testified that the images were "[n]ot necessarily" appropriate because "there are other views that you could get * * * which might have given us some other information[.]" (May 17, 2005 Tr. at 74.) However, while Dr. Stankiewicz made such a qualification about the post-operative images, he did not outright reject the images, but stated that "on the films that we have in this case, there is no evidence of" a puncture into Billy's brain. (May 17, 2005 Tr. at 74.)
 {¶ 36} Appellant also points to Billy experiencing cerebral spinal fluid leak after the sinus surgery to challenge Dr. Powell's claim that he did not puncture Billy's brain or brain lining during the surgery. However, such circumstances did not dispel the weight or credibility of Dr. Powell's claim because Dr. Powell testified that he saw no cerebral spinal fluid leak during the surgery, and Dr. Stankiewicz testified that cerebral spinal fluid would have leaked during the sinus surgery if there also happened to be a hole in the lining of Billy's brain.
 {¶ 37} Next, appellant challenges Dr. Powell's opinion that Billy experienced complications to his brain and skull after the sinus surgery because a coughing episode forced air, blood, and "maybe mucous" through a "weakened lateral wall" in the patient's sinus into the brain. (May 16, 2005 Tr. at 69.) Appellant first contends that Dr. Powell did not address Dr. Krouse's opinion that Dr. Powell caused Billy's brain to swell by puncturing the brain and brain lining during the sinus surgery. However, through his testimony, Dr. Powell attempted to explain the entirety of complications that Billy sustained in his brain and skull and made no indication that he was not refuting Dr. Krouse's opinion as to why post-operative images showed that Billy's brain became swollen.
 {¶ 38} Similarly, appellant challenges the weight and credibility of Dr. Powell's above explanation by noting that: (1) Dr. Krouse testified that he had never heard of a coughing episode causing blood to get into a person's skull; (2) Dr. Powell testified that he had neither previously heard of a coughing episode causing blood and air to be forced into the brain, nor read medical literature indicating such a possibility; (3) Dr. Powell first included the coughing episode in a medical report he dictated almost one month after Billy died and approximately two months after the coughing incident; and (4) Dr. Stankiewicz did not adopt Dr. Powell's explanation for Billy's brain injury.
 {¶ 39} However, despite such evidence, Dr. Stankiewicz verified that a sinus wall could erode, weaken, and open "to the point where a forceful or violent cough can force air or blood into the head[,]" and Billy's medical records specified that Billy experienced "[aggressive]" coughing after the sinus surgery. (May 17, 2005 Tr. at 116.) Such evidence supported Dr. Powell's opinion on Billy's brain and skull complications, and, as such, the jury need not have disregarded Dr. Powell's opinion.
 {¶ 40} Accordingly, based on the above, we conclude that appellees presented evidence that competently and credibly refuted appellant's claim that Dr. Powell punctured and injured Billy's brain and brain lining during the sinus surgery. As such, we determine that the trial court did not abuse its discretion by denying appellant's Civ.R. 59(A)(6) motion for new trial upon concluding that the judgment in favor of appellees is not against the manifest weight of the evidence in regards to the jury rejecting appellant's above-noted claim about Billy's brain injury.
 {¶ 41} Next, in her single assignment of error, appellant asserts that the jury could have only concluded from the evidence that Dr. Powell deviated from the requisite standard of care by operating on Billy while the patient had pneumonia. In arguing as such, appellant notes that Dr. Krouse testified that Billy's pre-operative chest x-ray indicated that the patient had pneumonia and that, due to anesthesia complications to pneumonia sufferers, Dr. Powell deviated from the requisite standard of care by operating on Billy without waiting for the pneumonia to subside. Thus, appellant asserts that the trial court erred by denying her Civ.R. 50(B) motion for judgment notwithstanding the verdict in regards to her claim that Dr. Powell deviated from the requisite standard of care by operating on Billy while the patient had pneumonia. We disagree.
 {¶ 42} Here, considering evidence in a light most favorable to appellees, we determine that substantial evidence supported appellees' contention that Dr. Powell did not deviate from the requisite standard of care by operating on Billy despite the pneumonia concerns, and, as such, we find that reasonable minds could reach different conclusions on the matter. Texler at 679-680; Civ.R. 50(B). In particular, Dr. Powell testified that it would have been "imprudent" and a "bad decision" to delay Billy's surgery in light of the need to address the potentially dangerous lesion in Billy's sinus. (May 16, 2005 Tr. at 33.) In addition, Dr. Stankiewicz testified that Dr. Powell made a "correct surgical or medical decision that comports with the standard of care" by operating on Billy on March 24, 2002. (May 17, 2005 Tr. at 75.) Similarly, Dr. Diaz, charged with Billy's pulmonary care, testified that Billy could have undergone surgery on March 24, 2002. Thus, we conclude that the trial court did not err by denying appellant's Civ.R. 50(B) motion for judgment notwithstanding the verdict in regards to the jury rejecting appellant's claim that Dr. Powell deviated from the requisite standard of care by operating on Billy while the patient had pneumonia.
 {¶ 43} Lastly, appellant contends that appellees nonetheless failed to present competent and credible evidence to refute appellant's claim that Dr. Powell deviated from the requisite standard of care by operating on Billy while the patient had pneumonia. Thus, according to appellant, the trial court erred by denying appellant's Civ.R. 59(A)(6) motion for new trial in regards to the jury rejecting appellant's above-noted claim. Again, we disagree.
 {¶ 44} As noted above, as to the Civ.R. 59(A)(6) motion, we review whether the trial court abused its discretion in overruling the new trial motion upon determining that the judgment was not against the manifest weight of the evidence.Malone at 448; Civ.R. 59(A)(6). Here, appellant challenges the weight and credibility of: (1) Dr. Powell's conclusion that sinus surgery was necessary on March 24, 2002, despite the pneumonia concerns; and (2) Dr. Stankiewicz's testimony that Dr. Powell did not deviate from the requisite standard of care by performing the operation on that date. In raising such a challenge, appellant first notes that Dr. Powell could not recall whether he reviewed the pre-operative chest x-ray report that indicated that Billy had pneumonia. According to appellant, Dr. Krouse testified that Dr. Powell had a duty to review the chest x-ray report before proceeding with the surgery, and that Dr. Powell had a duty to postpone the surgery until Billy's pneumonia subsided. However, we conclude that the jury need not have discounted the above testimonies from Drs. Stankiewicz and Powell. While there is some question as to whether Dr. Powell reviewed the chest x-ray before the surgery, Dr. Powell nonetheless testified that he spoke with the anesthesiologist about Billy before the surgery, and the anesthesiologist did not ask that Billy get additional testing or treatment before undergoing general anesthesia. While Dr. Krouse opined that such a circumstance did not alleviate Dr. Powell's duty to review the chest x-ray report, we find significant that Dr. Stankiewicz confirmed that, unlike here, he has had anesthesiologists tell him that they would not give a general anesthetic to a patient because of the patient's respiratory condition. In further support of Drs. Powell and Stankiewicz's above-challenged testimonies, Dr. Stankiewicz stated that he had operated on patients with general anesthesia even though the patients suffered from pneumonia. Alternatively, we note that Dr. Diaz had cast doubt on appellant's pneumonia claim when he testified "whether or not [Billy] had pneumonia is * * * in question" and when he testified that he saw nothing remarkable about the pre-operative chest x-ray. (May 17, 2005 Tr. at 46.)
 {¶ 45} Appellant also challenges Drs. Powell and Stankiewicz's above-noted testimonies by arguing that Dr. Stankiewicz actually supported appellant's case when the expert witness testified that the sinus surgery could have gone forward within a week from the discovery of Billy's pneumonia. However, in so testifying, Dr. Stankiewicz did not advocate any significant delay, but confirmed Dr. Powell's concerns when he testified that he would perform the surgery "as soon as possible" and when he testified that the lesion in Billy's sinus needed "urgent consideration as far as finding out what it [was] and moving on it." (May 17, 2005 Tr. at 85, 60.)
 {¶ 46} Next, appellant contests the weight and credibility of Dr. Powell's claim that Billy urgently needed surgery on March 24, 2002 to diagnose the lesion in Billy's sinus. Appellant points to post-operative images that still showed the lesion. However, Dr. Powell testified that the post-operative images showed that he went into the affected sinus, and Dr. Powell testified that he took samples of the lesion, but avoided areas near the optic nerve. Likewise, Dr. Stankiewicz testified that the medical records and images established that Dr. Powell operated on the affected sinus and accomplished the objectives of the surgery, i.e., draining the sinus and taking samples of the lesion for pathology analysis.
 {¶ 47} Moreover, in challenging Dr. Powell's claim about the urgency of the surgery, appellant notes that: (1) Dr. Powell did not obtain a cancer biopsy for the lesion in Billy's sinus; (2) Dr. Krouse testified that Dr. Powell's pre-operative diagnosis for chronic sinusitis did not constitute a surgical emergency; and (3) Dr. Krouse testified that the surgery consent form did not reference a surgical emergency when it denoted a diagnosis for a cyst in Billy's sinus.
 {¶ 48} However, despite such evidence, the record nonetheless supported the credibility and weight of Dr. Powell's claim about the urgency of the surgery. In particular, Dr. Powell acknowledged the urgent and potentially life threatening concerns that he had about the lesion in Billy's sinus. In addition, Dr. Diaz testified that he had Billy admitted to the hospital because the physician was concerned about the need for "expedient surgical management" of the abnormality in Billy's sinus. (May 17, 2005 Tr. at 20.) Likewise, Dr. Mangino testified about her concerns for the need for "emergent surgery" on Billy's sinus. (May 16, 2005 Tr. at 111.) Moreover, as noted above, appellees' expert witness, Dr. Stankiewicz, verified that a radiologist described the lesion as "destructive," and Dr. Stankiewicz also testified that the lesion in Billy's sinus needed "urgent consideration" and that there was a need to operate "as soon as possible[.]" (May 17, 2005 Tr. at 65, 60, 85.)
 {¶ 49} Accordingly, we conclude that appellees presented evidence that competently and credibly refuted appellant's claim that Dr. Powell deviated from the requisite standard of care by operating on Billy while the patient had pneumonia. As such, we determine that the trial court did not abuse its discretion by denying appellant's Civ.R. 59(A)(6) motion for new trial upon concluding that the judgment is not against the manifest weight of the evidence in regards to the issue surrounding Dr. Powell operating on Billy while the patient had pneumonia.
 {¶ 50} In summary, we conclude that the trial court did not err by denying appellant's Civ.R. 50(B) motion for judgment notwithstanding the verdict and appellant's Civ.R. 59(A)(6) motion for new trial. Therefore, we overrule appellant's single assignment of error. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and Sadler, JJ., concur.