[Cite as *Koerper v. Szabo*, 2019-Ohio-3159.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Jamie Koerper et al.,                                    :

      Plaintiffs-Appellants,              :              No. 18AP-734
                                          (C.P.C. No. 17CV-6295)
v.                                                       :
                                    (REGULAR CALENDAR)
Norma Szabo,                                             :

      Defendant-Appellee.              :


D E C I S I O N

Rendered on August 6, 2019


**On brief:** *Donahey & Defossez,* and *Curtis M. Fifner*, for appellants. **Argued:** *Curtis M. Fifner.*

**On brief:** *Ritzler, Coughlin & Paglia*, and *Joseph G. Ritzler,* for appellee. **Argued:** *Rachel E. Ladan.*


APPEAL from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} Plaintiffs-appellants, Jamie and Nathan Koerper, appeal from a judgment entered by the Franklin County Court of Common Pleas denying their motion for new trial pursuant to Civ.R. 59. Because the trial court properly denied appellants' motion for new trial, we affirm.

{¶ 2} On July 14, 2017, appellants filed a complaint alleging negligence and loss of consortium against defendant-appellee, Norma Szabo, arising from a February 24, 2014 motor vehicle accident.[1] On that date, Jamie was driving a minivan and was struck from behind by a vehicle driven by appellee; Jamie suffered injuries as a result of the accident.[2]

---

[1] The case is a refiled action from Franklin C.P. No. 16CV-1929.
[2] Appellants' young son was a passenger in the minivan; he was not injured in the accident.

No. 18AP-734

At the November 2017 trial, appellee stipulated to breach of duty; accordingly, the only issues tried to the jury were proximate cause and damages.

{¶ 3} Following trial, the jury found by a preponderance of the evidence that appellee's negligence was the proximate cause of Jamie's injuries. The jury awarded Jamie damages totaling $15,000; $10,000 for past economic damages and $5,000 for past non-economic damages. The jury awarded $0 for future economic and non-economic damages and $0 for loss of consortium.

{¶ 4} On December 20, 2017, appellants filed a motion for new trial pursuant to Civ.R. 59(A)(1), (4), (6) and (9). On August 30, 2018, the trial court filed a decision and entry denying appellants' motion.

{¶ 5} Appellants have timely appealed from the trial court's denial of their motion for new trial and set forth the following four assignments of error for our review:

> [1]. The Trial Court Abused its Discretion by Permitting the Jury to Hear Speculative Testimony from Dr. Kerner[.]
>
> [2]. The Trial Court Abused its Discretion by Refusing to Give Appellants' Successive Tortfeasor Jury Instruction as an Injury that is Caused or Aggravated by a Subsequent Treating Medical Provider Relates Back to the Original Tortfeasor[.]
>
> [3]. The Trial Court Erred by Refusing to Grant a New Trial Because the Jury's Verdict was Inadequate and the Judgment was Against the Manifest Weight of the Evidence[.]
>
> [4]. The Trial Court Abused its Discretion as a New Trial should have been Granted due to Irregularity in the Proceedings by the Court, and Errors of Law that were Perpetuated Throughout Trial[.]

{¶ 6} In their first assignment of error, appellants contend that the trial court erred in denying their motion for new trial pursuant to Civ.R. 59(A)(1) and (9). More particularly, appellants argue that the trial court erred in permitting appellants' expert medical witness to be cross-examined on alternative causes of Jamie's injuries.

{¶ 7} Civ.R. 59(A)(1) permits a new trial on all or part of the issues if the moving party demonstrates "[i]rregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an

aggrieved party was prevented from having a fair trial."  "In the context of a motion for a new trial, an 'irregularity' is 'a departure from the due, orderly and established mode of proceeding therein, where a party, with no fault on his part, has been deprived of some right or benefit otherwise available to him.' "  *Ellinger v. Ho,* 10th Dist. No. 08AP-1079, 201o-Ohio-553, ¶ 63, quoting *Meyer v. Srivastava,* 141 Ohio App.3d 662, 667 (2001). Disposition of a motion for new trial on the ground set forth in Civ.R. 59(A)(1) is a decision committed to the sound discretion of the trial court, and a reviewing court will not reverse such a ruling absent an abuse of discretion.  *Id.*, citing *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, ¶ 35. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 8}  In addition, Civ.R. 59(A)(9) permits a new trial based on an "[e]rror of law occurring at the trial and brought to the attention of the trial court by the party making the application."  An appellate court's review of a motion pursuant to Civ.R. 59(A)(9) is de novo. *Ferguson v. Dyer*, 149 Ohio App.3d 380, 383 (10th Dist.2002).

{¶ 9}  On October 30, 2017, appellants filed a motion in limine requesting an order precluding appellee from "commenting upon, introducing evidence of, or arguing 'possibilities' concerning the cause of, extent of, diagnosis and/or treatment of * * * (Jamie)'s injuries and extent of their damages."  (Oct. 30, 2017 Pls. Mot. in Limine at 1.) The motion was made in response to appellee's cross-examination of appellants' medical expert, Todd Kerner, M.D., Ph.D., during his videotaped deposition conducted on May 5, 2017.  Appellants specifically requested that the court preclude Dr. Kerner's cross-examination testimony that he "can't rule out the fact that the chiropractor could have caused [Jamie's] injury in this case."  (Kerner Dep. at 88-89.)  Prior to the presentation of testimony at trial, the trial court orally denied the motion, reasoning that the cross-examination of Dr. Kerner "goes to * * * his base of knowledge in forming his opinion and * * * the weight of his opinion."  (Tr. at 7-8.)

{¶ 10}  In his videotaped deposition testimony, Dr. Kerner averred that he is board-certified in physical medicine and rehabilitation.  He began treating Jamie on June 16, 2014 pursuant to a referral from Jamie's chiropractor. At her first appointment, Jamie complained of intermittent lower back pain radiating into her legs, which she said began

suddenly following the February 24, 2014 accident. Jamie reported that she had received several chiropractic adjustments which were only temporarily beneficial and had undergone an MRI on May 12, 2014, which showed a disc displacement at L4-5 and L5-S1. Based on the MRI results and his physical examination of Jamie, Dr. Kerner concluded that it was "more likely than not that she had an acute onset of radiculopathy, a herniated disc that caused radicular symptoms intermittently down her legs, as a * * * direct result of the accident." (Kerner Dep. at 22.) Dr. Kerner gave Jamie an epidural steroid injection on July 10, 2014, which temporarily reduced both her lower back pain and the radiculopathy. She had a second epidural steroid injection on August 6, 2014, which again temporarily decreased her pain.

{¶ 11} Jamie did not seek further treatment from Dr. Kerner until April 2017, at which time she reported symptoms identical to those in 2014. She had a second MRI on April 14, 2017 and received another epidural steroid injection on April 20, 2017. Based upon the MRI results and his physical examination, Dr. Kerner opined that Jamie "has an active ongoing medical problem that has not resolved." *Id.* at 32. He further opined, based upon his education, training, and experience and to a reasonable degree of medical certainty and probability that Jamie's "ongoing active medical problem" was "likely more than not" "directly caused by [the] motor vehicle accident in 2014." *Id.* at 35.

{¶ 12} When questioned as to the permanency of Jamie's injuries, Dr. Kerner opined, "[i]t's hard to say, but certainly the fact that she's had these symptoms for three years is likely - - implies that there's a good chance, a 50 - - I would say slightly higher than 50 percent chance that they will be permanent." *Id.* at 36. He further opined that Jamie was "likely going to have chronic lower back pain and chronic radicular symptoms * * * that will likely worsen with age." *Id.* at 38. Dr. Kerner averred that additional medical treatment, including further chiropractic adjustments, medication, and epidural steroid injections would be reasonable and necessary to address her ongoing problems.

{¶ 13} On cross-examination, Dr. Kerner testified that prior to formulating his opinion, he reviewed the chiropractor's referral information and the chiropractic treatment provided, Jamie's MRIs, the intake documentation Jamie completed at his office, and his own progress notes from 2014 to the present. He admitted that he did not review the accident report, the medical records of Jamie's primary care physician generated the day

after the accident, or the records of the chiropractor. Dr. Kerner admitted that he was unaware that Jamie did not complain of lower back pain and radiculopathy until April 22, 2014, which was 57 days after the accident, and after she received 20 chiropractic treatments. Although he conceded that the chiropractic treatments involved applying force to Jamie's spine, he averred that he was not trained in chiropractic methods so he was not qualified to determine if the treatments were helping or hurting her or whether they were medically necessary. Dr. Kerner acknowledged that he did not treat Jamie from August 18, 2014 until April 5, 2017, when she returned for treatment due to ongoing back pain and radiculopathy. He was steadfast in his opinion that the February 24, 2014 traffic accident caused Jamie's ongoing back issues because "it seemed to be too much of a coincidence that the exact same symptoms would reoccur on the same patient." *Id.* at 77.

{¶ 14} On redirect examination, Dr. Kerner testified that his opinion as to the ongoing nature of Jamie's injuries would not have changed even if he had reviewed the records of her primary care physician as his opinion was based entirely on his own physical examination, Jamie's history, the MRIs and objective results. He further averred that radiating back pain does not necessarily manifest immediately after a motor vehicle accident; indeed, Dr. Kerner stated that "[i]t's very common for patients to have pathology in the back that they don't even know about or causes a problem later on." *Id.* at 83. He further asserted that any new or intervening injuries to Jamie's lower back would have been apparent on the April 2017 MRI. He also testified that none of the medical literature with which he was familiar indicated that chiropractic treatments cause radiculopathy in a patient following a motor vehicle accident. On re-cross examination, appellee's counsel inquired, "But it's true, then, you can't rule out the fact that the chiropractor could have caused this injury in this case, correct?" Dr. Kerner responded, "No, I cannot rule that out." *Id.* at 88-89. Appellants asked no further questions of Dr. Kerner.

{¶ 15} Based upon Dr. Kerner's testimony that he could not "rule out" the possibility that the chiropractor could have caused Jamie's injury, appellants requested a jury instruction on alternative causes pursuant to *Stinson v. England,* 69 Ohio St.3d 451 (1994), which held that expert opinion regarding a causative event, including alternative causes, must be expressed in terms of probability irrespective of whether the proponent of the evidence bears the burden of persuasion with respect to the issue. Appellants argued that

the jury instruction was proper because appellee's question regarding whether Dr. Kerner could "rule out" that the chiropractor caused Jamie's injury was a thinly veiled attempt to establish an alternative cause of Jamie's injury by mere possibility, not probability. Appellee's counsel objected to the instruction, arguing that, pursuant to *Stinson,* she was permitted to cross-examine Dr. Kerner as to "another potential cause, but it's certainly not my burden to meet." (Tr. at 390.) The trial court averred that although appellee was permitted to cross-examine Dr. Kerner to impeach his credibility, any allegation that there was an alternative cause of Jamie's injuries was a separate issue requiring expert testimony. Appellee's counsel stated, "I don't think it has risen to that level." *Id.* at 391. Appellants' counsel agreed, stating, "Yeah, I agree it hasn't risen to the level of probability." *Id.* Appellants thereafter requested that the jury be instructed that it was permitted to consider an alternative cause of Jamie's injury only if there was evidence that the alternative cause was established as a probability and not merely a possibility. Appellee countered that she did not believe Dr. Kerner ever testified on either direct or cross-examination that the chiropractor caused Jamie's injuries and that her cross-examination was directed at impeaching Dr. Kerner's credibility. The trial court ultimately determined that it would provide the requested instruction over appellee's objection.

{¶ 16} The admission or exclusion of evidence, including expert testimony, rests within the sound discretion of the trial court and will be reversed only for an abuse of that discretion. *Fritch v. Univ. of Toledo College of Med.,* 10th Dist. No. 11AP-103, 2011-Ohio-4518, ¶ 5.

{¶ 17} Appellants contend that the trial court erred in failing to preclude appellee from asking Dr. Kerner whether he could "rule out" the possibility that the chiropractor caused Jamie's injuries, as it was not based upon a reasonable degree of medical certainty or probability, was speculative, and required Dr. Kerner to offer an opinion he had already testified he was not qualified to give.

{¶ 18} Appellants contend that *Stinson* supports their position. There, the plaintiff presented expert medical testimony as to the cause of her injuries. The defendant presented his own medical expert, who advanced three possibilities as to the cause of the plaintiff's injuries, one of which was the cause advanced by the plaintiff's expert. The defendant's expert opined that the "most likely" cause of the plaintiff's injuries was one of

the two other causative possibilities. *Id.* at 454. The plaintiff disputed the admissibility of the defendant's expert's testimony, contending it was incompetent because expert testimony regarding causation must be stated in terms of probability, not mere possibility.

{¶ 19} The court averred that a defendant may rebut a plaintiff's prima facie case establishing negligence in terms of probability through cross-examination of the plaintiff's expert, presentation of contrary evidence that the defendant's negligence was not the probable cause of the injuries, or presentation of evidence establishing an alternative cause of the injuries. *Id.* at 456. Where the last approach is pursued, the defendant must adduce expert testimony of its probable nature. The court concluded that the testimony of the defendant's expert that another event was the most likely cause of the plaintiff's injuries was tantamount to an opinion that the cause advanced by the plaintiff was not the probable cause and thus was competent evidence which controverted a fact propounded by the plaintiff. *Id.*

{¶ 20} Thus, in addition to noting the viability of cross-examining a plaintiff's witness as a means of rebutting a prima facie case, *Stinson* distinguished between the two other methods of defense. *Fritch*, 10th Dist. No. 11AP-103, 2011-Ohio-4518, ¶ 16. The first method is one in which the defendant offers an alternative explanation for the plaintiff's injuries. *Id.*, citing *Stinson* at 456. In such a case, the defendant must adduce expert testimony establishing probability of the alternative cause. *Id.,* citing *Stinson.* The second method is one in which the defendant controverts a fact propounded by the plaintiff. *Id.*, citing *Stinson.* Under this method, an expert's opinion may be properly admissible even if it is not stated in terms of probability. *Id.*, citing *Kalaitsides v. Greene,* 9th Dist. No. 17195 (June 12, 1996). As we noted in *Fritch,* the *Stinson* court reasoned that under the second method of defense, the testimony is significant not because it independently proclaims a cause with a likelihood of greater than 50 percent, but because it undercuts the plaintiff's theory of causation. *Fritch* at ¶ 17. Contrary to appellants' assertion, *Stinson* "did not establish an inflexible rule that all expert testimony must include testimony of causation, stated in terms of probability, regardless of the testimony's purpose." *Id.* Rather, this court has recognized that expert testimony that presents other potential causes of injury to be tantamount to an opinion that the cause advanced by the plaintiff is not the probable cause of the injury. *Id.* at ¶ 21-23.

{¶ 21} Here, Dr. Kerner's averment that he could not rule out the chiropractic treatments as a cause of Jamie's injury was properly admitted under *Stinson* in two ways. First, Dr. Kerner's testimony included his theory of causation within a reasonable degree of medical certainty and probability along with his explanation of how he arrived at his theory. Appellee did not present her own expert to prove an alternative cause. Appellee was cross-examining Dr. Kerner as to the soundness and credibility of his opinion of causation. Appellee's inquiry was permissible on cross-examination to cast doubt on Dr. Kerner's credibility regarding his opinion as to the cause of Jamie's injuries. Appellee's questions were designed to point out that Dr. Kerner failed to review all the medical records generated subsequent to Jamie's accident and was unaware that Jamie did not complain of lower back pain and radiculopathy until April 22, 2014, which was 57 days after the accident and after she had received 20 chiropractic treatments. Under *Stinson,* cross-examination of appellants' expert was an acceptable method of testing the soundness of Dr. Kerner's opinion and eliciting an answer as to why and how he came to the conclusion that the accident was the probable cause of Jamie's injuries over and above other possible causes.

{¶ 22} Secondly, the testimony was properly admitted despite the fact that it was not stated in terms of probability because appellee was controverting a fact propounded by appellants, i.e., that the accident proximately caused Jamie's injuries. Dr. Kerner's admission that he could not rule out another possible cause of Jamie's injuries, by definition, makes the cause he espoused less likely. As in *Stinson,* this testimony is tantamount to an opinion that the cause advanced by appellants was not the probable cause of injury.

{¶ 23} Moreover, even if the jury believed that the challenged testimony was being offered to prove an alternative cause, the trial court provided the alternative cause jury instruction requested by appellants. Indeed, the trial court instructed the jury that "[e]xpert opinion regarding a causative event, including alternative causes, must [be] express[ed] in terms of probability irrespective of whether the proponent of the evidence bears the burden of persuasion with respect to that issue." (Tr. at 511.) Thus, any alleged error in admission of the testimony was cured by the appropriate jury instruction. "Proper jury instructions and arguments of counsel can fairly insure that juries do not use evidence

No. 18AP-734

for an improper purpose." *Bruce v. Junghun,* 182 Ohio App.3d 341, 351 (10th Dist.2009)(Brown, J., concurring.)

{¶ 24} Accordingly, we conclude that because the trial court did not err in admitting the challenged cross-examination testimony of Dr. Kerner, appellants were not entitled to a new trial on either Civ.R. 59(A)(1) or (9) grounds as to this issue. The first assignment of error is overruled.

{¶ 25} In their second assignment of error, appellants argue that the trial court erred in denying their motion for new trial, again on Civ.R. 59(A)(1) and (9) grounds. In particular, appellants contend the trial court erred in failing to instruct the jury on the successive tortfeasor rule.

{¶ 26} A trial court has discretion in determining whether to give or refuse a particular instruction, and a reviewing court will not disturb that decision absent an abuse of that discretion. *R.T. v. Knobeloch,* 10th Dist. No. 16AP-809, 2018-Ohio-1596, ¶ 12, citing *Clark v. Grant Med. Ctr.,* 10th Dist. No 14AP-833, 2015-Ohio-4958, ¶ 50. An appellate court determines whether the trial court abused its discretion in refusing to provide a requested instruction under the facts and circumstances of the particular case. *Id.* at ¶ 32, citing *State v. Gover,* 10th Dist. No. 05AP-1034, 2006-Ohio-4338, ¶ 22.

{¶ 27} Appellants orally requested a jury instruction on the so-called "successive tortfeasor rule" pursuant to *Tanner v. Espey,* 128 Ohio St. 82 (1934), paragraph one of the syllabus, which reads, "[i]f one who has suffered personal injuries by reason of another's negligence exercises reasonable care in obtaining the services of a competent physician * * *, and such injuries are thereafter aggravated by the negligence, mistake or lack of skill of such physician * * *, such aggravation is a proximate result of the negligence of the original tortfeasor, and he is liable therefor." The trial court denied appellants' request, finding that the cross-examination of Dr. Kerner regarding the chiropractor's "possible misconduct" was not offered or argued as substantive evidence of the chiropractor's negligence; rather, it was offered for the purpose of impeaching Dr. Kerner's testimony. (Tr. at 400-01.)

{¶ 28} Dr. Kerner's testimony does not establish that the trial court erred in refusing to give the successive tortfeasor instruction. Dr. Kerner did not testify that the chiropractor was negligent; indeed, he testified that he had no training in chiropractic medicine and was

No. 18AP-734

not qualified to opine as to whether the chiropractic treatments were helping or harming Jamie.

{¶ 29} Moreover, appellants' reliance on *Bendner v. Carr,* 40 Ohio App.3d 149, 154 (2d Dist.1987) is misplaced. There, the plaintiff was injured in an automobile accident proximately caused by the defendant. Following the accident, the plaintiff developed a condition arising from a surgical procedure necessitated by injuries arising out of the accident. The trial court refused to provide the jury with a successive tortfeasor instruction as proposed by plaintiff. On appeal, the court concluded that the trial court erred in refusing to give the instruction. In so concluding, the trial court noted that the defendant's counsel argued during closing argument that the defendant was not chargeable with injuries sustained after the surgery. The court held that because the jury was not properly instructed as to subsequent medical treatment, the jury obviously did not consider any of the damages shown to have followed the surgery. *Bendner* is inapposite because in the present case, counsel for appellee did not argue that appellee was not responsible for any injury Jamie may have sustained at the hands of the chiropractor.

{¶ 30} Because the trial court did not err in refusing to provide a successive tortfeasor instruction, appellants were not entitled to a new trial pursuant to either Civ.R. 59(A)(1) or (9) as to that issue. The second assignment of error is overruled.

{¶ 31} In their third assignment of error, appellants contend the trial court abused its discretion in denying their motion for new trial pursuant to Civ.R. 59(A)(4) and (6). Specifically, appellants contend the jury's award of $0 for future economic and non-economic damages was inadequate and against the manifest weight of the evidence.

{¶ 32} Civ.R. 59(A)(4) permits a new trial based on "inadequate damages, appearing to have been given under the influence of passion or prejudice." "The decision whether to grant a motion for a new trial pursuant to Civ.R. 59(A)(4) rests within the sound discretion of the trial court, and it will not be disturbed on appeal absent an abuse of that discretion." *Salvatore v. Findley*, 10th Dist. No. 07AP-793, 2008-Ohio-3294, ¶ 20, citing *Miller v. Lindsay-Green, Inc.,* 10th Dist. No. 04AP-848, 2005-Ohio-6366, ¶ 75. In determining whether a trial court has abused its discretion, an appellate court must consider the amount of the verdict, whether the jury considered incompetent evidence, and whether improper conduct by the court or counsel potentially influenced the jury. *Id.,* citing *Miller.* Although

the size of the verdict is a factor to be considered, it alone does not establish proof of passion or prejudice. *Salvatore,* citing *Miller.* Instead, the record must contain some evidence the complaining party can point to that wrongfully inflamed the sensibilities of the jury. *Id.* "A trial court should not grant a new trial on the basis of passion or prejudice unless the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities." *Id.*, citing *Miller.*

{¶ 33} As previously noted, the size of the verdict alone cannot prove passion or prejudice. *Salvatore* at ¶ 20. Thus, the jury's decision to award appellants nothing for future economic or non-economic damages does not, in and of itself, establish that it appeared to be made under the influence of passion or prejudice. *See also Watkins v. Roetzel,* 9th Dist. No. 07CA0024-M, 2008-Ohio-1881 (no abuse of discretion in the denial of a motion for new trial based on inadequate damages where there was nothing in the record to support a showing that the jury's passion or prejudice was inflamed and the size of the award was insufficient to establish the same); *Dyson v. V & V Appliance Parts, Inc.,* 9th Dist. No. 23661, 2008-Ohio-782 (even assuming as true plaintiff's declaration that the jury's damage award was inadequate, there was no assertion or support in the record that the award appeared to be given under the influence of passion or prejudice).

{¶ 34} Thus, even if appellants are correct in their assertion that the damage award was inadequate, we find no evidence to support their argument that the jury was influenced by passion or prejudice in making its award. Indeed, in denying appellants' motion for new trial, the trial court averred that appellants did not cite to any portion of the record in support of their claim. Our review of the record compels concurrence with the trial court. Accordingly, we conclude that the trial court did not abuse its discretion when it found that the jury's damages award was not a result of passion or prejudice; thus, the trial court did not err in denying appellants' motion for new trial pursuant to Civ.R. 59(A)(4).

{¶ 35} Appellants further contend the damage award was against the manifest weight of the evidence because they presented uncontroverted evidence that Jamie's injuries are permanent. Pursuant to Civ.R. 59(A)(6), a trial court may order a new trial on all or part of the issues if "[t]he judgment is not sustained by the weight of the evidence." When presented with a motion premised on Civ.R. 59(A)(6), a trial court must weigh the evidence and consider the credibility of the witnesses to determine whether the manifest

No. 18AP-734

weight of the evidence supports the judgment. *Salvatore* at ¶ 24, citing *Duffer v. Powell,* 10th Dist. No 05AP-859, 2006-Ohio-2613, at ¶ 32-33. A judgment is not against the manifest weight of the evidence if there is competent, credible evidence to support it. *Id.* An appellate court does not directly review whether the judgment was against the manifest weight of the evidence; rather, we determine whether the trial court abused its discretion in ruling on the Civ.R. 59(A)(6) motion. *Id.* "Such deference to the trial court's decision recognizes that the trial court is in a better position to determine credibility issues." *Id.*

{¶ 36} As to the issue of permanence of her injuries, Jamie testified that she sought treatment from Dr. Kerner in April 2017 because her condition had not improved since her last visit in August 2014. Due to her ongoing back pain and radiculopathy, she received one epidural steroid injection in April 2017 and one in June 2017. She explained that she did not see Dr. Kerner during the two and one-half year time period between August 2014 and April 2017 because she was employed fulltime and had to tend to the needs of her young children, one of whom had medical issues during that period. She also averred that she still cannot physically engage with her children as she did before the accident. She acknowledged, however, that she did not take a leave of absence from her employment as an elementary school intervention specialist after the accident and has not missed any significant time from work due to the accident; indeed, she missed only one or two days of work immediately after the accident to attend doctor appointments.

{¶ 37} Becky Darnell, Jamie's friend and colleague at school, testified that at the time of the accident, Jamie was assigned to her third-grade classroom. According to Darnell, prior to the accident, Jamie often sat on the floor of the classroom to assist students when necessary; however, since the accident, she is less inclined to do so. She often shifts her weight from side to side and leans against a table or desk or sits in a chair. Darnell stated that although Jamie does not complain much about back pain, she knows Jamie is uncomfortable and in pain because she winces, repositions herself in her chair, and sometimes uses a heating pad. Darnell admitted, however, that Jamie has not missed any significant time from work due to the accident and has continued to work as an intervention specialist. Darnell further acknowledged that she has not noticed any change in Jamie's interaction with her (Jamie's) young children since the accident.

{¶ 38} Appellants also presented the October 2017 videotaped deposition testimony of Nathan's mother, Cathleen Koerper. According to Cathleen, in the years preceding the accident, Jamie was involved in various Koerper outdoor family activities, including playing soccer, football, baseball, kickball, and swimming. Since the accident, however, Jamie's participation in family sporting events has decreased significantly.

{¶ 39} Nathan also testified regarding the permanency of Jamie's injuries. To that end, he averred that since the accident, Jamie is oftentimes extremely uncomfortable, has a very low energy level, and is in pain. Her interaction with their children, particularly with regard to outdoor activities, has decreased appreciably. Nathan also testified that Jamie is extremely anxious before she has an epidural steroid injection and has to take Valium prior to the procedure to help curtail her anxiety. According to Nathan, the injections decrease Jamie's back pain and radiculopathy only temporarily.

{¶ 40} Appellants also rely on the testimony of Dr. Kerner in support of their permanency argument. As noted above, Dr. Kerner averred that it was "hard to say" whether Jamie's injuries were permanent. (Kerner Dep. at 36.) However, he ultimately opined that there is "a slightly higher than 50 percent chance that they will be permanent." *Id.* He further opined that Jamie was "likely going to have chronic lower back pain and chronic radicular symptoms * * * that will likely worsen with age." *Id.* at 38.

{¶ 41} Upon this evidence, the trial court determined that the jury's verdict was supported by competent, credible evidence that Jamie did not suffer permanent injuries resulting from the accident. The trial court noted that Dr. Kerner's testimony on this issue was equivocal and barely met the threshold for admissibility under *Stinson.* Further, noting Jamie's admission that she did not seek or receive medical care from August 2014 to April 2017, the court determined the jury could reasonably conclude that Jamie did not seek treatment because she was not permanently injured. The court further found that the jury could have concluded that Darnell's close relationship with Jamie may have influenced or impugned her testimony regarding Jamie's post-accident physical limitations. The court concluded that, after weighing the evidence and the credibility of Jamie, Darnell, and Dr. Kerner, the jury could have reasonably concluded that Jamie did not suffer permanent injuries resulting from the accident. Although the trial court did not reference the testimony of Nathan and his mother, we conclude that such omission was not prejudicial

as the jury could have found that their testimony suffered the same infirmity as that of Darnell.

{¶ 42} The jury awarded Jamie $10,000 in past economic damages and $5,000 in past non-economic damages. The fact that the jury awarded appellants $0 for future economic and non-economic damages clearly indicates that the jury did not believe that Jamie suffered permanent injuries as a result of the accident. The weight to be given the evidence and the credibility of the witnesses are primarily matters for the jury. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, as trier of fact, is free to believe or disbelieve all or any part of the testimony of any witness. *State v. Flood*, 10th Dist. No. 18AP-206, 2019-Ohio-2524, ¶ 21. The jury's findings are entitled to deference because the jury is able to observe the witnesses' demeanor, gestures, and voice inflections and use those observations in evaluating credibility. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 43} Upon review of the record, we cannot conclude that the trial court abused its discretion in denying appellants' motion for new trial pursuant to Civ.R. 59(A)(6), as there exists in the record competent, credible evidence to support the jury's damage award. The third assignment of error is overruled.

{¶ 44} In their fourth assignment of error, appellants contend that the trial court erred by failing to grant their motion for new trial pursuant to Civ.R. 59(A)(1) and (9). Appellants point to allegedly improper rulings by the trial court pertaining to evidentiary issues and appellants' counsel's closing argument.

{¶ 45} Prior to appellee's testimony, counsel for appellants expressed concern that appellee's counsel would attempt to elicit testimony from appellee that was designed to garner sympathy for her. The trial court averred that because it could not predict what questions would be posed and what answers would be provided, it would rule on any objections raised by counsel at the proper time. During appellee's direct testimony, her counsel posed three questions: (1) had she apologized to Jamie for causing the accident; (2) when had she received notice that Jamie had sued her for money damages; and (3) if there was anything she would like to say to Jamie in open court. Appellants' counsel objected to the questions, and the trial court sustained the objections. The trial court instructed the jury that it was to disregard statements, questions or answers to which the

court sustained an objection and that it was not to be influenced by any consideration of sympathy. We presume the jury following these instructions. *State v. Reynolds,* 10th Dist. No. 18AP-560, 2019-Ohio-2343, ¶ 52, citing *State v. Walker,* 10th Dist. No. 17AP-588, 2019-Ohio-1458.

{¶ 46} Early in his closing argument, appellants' counsel commenced a PowerPoint presentation. The trial court, noting that one of the PowerPoint slides included the following statement, "Why we sued Ms. Szabo," admonished counsel that use of the word "we" was inappropriate because counsel was not a plaintiff in the case. (Tr. at 433.)

{¶ 47} Concerned about what other slides might be included in the PowerPoint presentation, the trial court permitted appellee's counsel to review it outside the presence of the jury. Upon objections by appellee's counsel, the trial court permitted appellants' counsel to amend the challenged language to state "why the Koerpers sued Ms. Szabo." The trial court struck use of the word "we" in the statement "Before we came to trial," but permitted its use in the phrase "What are we asking you for." *Id.* at 436, 442. The court also found inappropriate the statement "How can you make a difference," concluding that it was intended to "send a message" and "play[ ] on feelings of sympathy and compassion." *Id.* at 442. Later during closing argument, the trial court sustained objections to appellants' counsel's use of the word "I" in various contexts. *Id.* at 463, 466, 494. Appellants argue that the trial court did not similarly admonish appellee's counsel regarding her use of the terms "I" and "we" in her opening statement and closing argument. A review of the record reveals, however, that appellants' counsel objected only to one such instance, and the trial court sustained the objection.

{¶ 48} The trial court also sustained appellee's objection to appellants' counsel's attempted visual demonstration in the PowerPoint presentation regarding how to complete the jury interrogatories as to the amount of damages to be awarded appellants. Although the record on appeal does not include the PowerPoint presentation, the discussion on the record and the parties' briefs on appeal indicate that counsel actually inserted a suggested damage award into the interrogatories. The trial court concluded that such was improper as a play on the jury's passion, prejudice, and sympathy and averred that it would present proper interrogatories to the jury. Thereafter, appellants' counsel orally explained to the

jury the mechanics of completing the interrogatories, including a finding of proximate cause and the amount of damages to be awarded appellants.

{¶ 49} Appellants contend that the trial court's actions with regard to the foregoing were improper. However, after a thorough review of the record, we cannot conclude that the trial court abused its discretion or committed errors of law in ruling as it did. Moreover, even if the trial court erred in its rulings, no evidence suggests that appellants were prejudiced thereby.

{¶ 50} Accordingly, we cannot conclude that the trial court erred in denying appellants' motion for new trial pursuant to Civ.R. 59(A)(1) and (9) on these issues. The fourth assignment of error is overruled.

{¶ 51} Having overruled appellants' four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and BEATTY BLUNT, JJ., concur.

———————————